UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------- x

BROOKLYN CENTER FOR INDEPENDENCE OF
THE DISABLED, *et al.,*

                                        Plaintiffs,                    11 Civ. 6690 (JMF)(FM)

                    -against-

MICHAEL R. BLOOMBERG, in his official capacity as
Mayor of the City of New York, and the CITY OF NEW
YORK,

                                        Defendants.

----------------------------------------------------------------------- x

---

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO CERTIFY A PROPOSED CLASS

---

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
*Attorney for Defendants*
100 Church Street
New York, N.Y. 10007
Of Counsel:    Martha A. Calhoun
                    Mark G. Toews
                    Carolyn E. Kruk

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ........................................................................... 1

RELEVANT FACTS AND PROCEDURAL POSTURE.................................... 3

    The Plaintiffs ................................................................................... 3

    The Putative Class Members ........................................................... 6

STANDARD OF REVIEW ................................................................................. 6

ARGUMENT

    POINT I

        PLAINTIFFS' PROPOSED CLASS CANNOT BE
        CERTIFIED BECAUSE PLAINTIFFS LACK
        STANDING. ................................................................................. 8

        A.    Standing is a Threshold Requirement to Class
            Certification. .................................................................... 9

        B.    The Individually Named Plaintiffs Lack
            Standing. .......................................................................... 9

            i.    Plaintiff Gregory Bell Lacks Standing. .................................. 10

            ii.    Plaintiff Tania Morales Lacks Standing. ................................ 11

            iii.    Even if Plaintiff Morales Has Standing,
                 it is Only Co-extensive with Alleged
                 Violations Specific to Her Particular
                 Disability............................................................. 13

        C.    The Organizational Plaintiffs Lack Standing. ................................ 14

            i.    The Organizational Plaintiffs Fail to
                 Establish Associational Standing............................................ 15

ii.    The Organizational Plaintiffs Fail to Demonstrate that Defendants' Purportedly Discriminatory Policies Necessitated any Action that They Otherwise Would Not Have Undertaken. ...............................16

D.    Plaintiffs' Argument that Generalized Anxiety Concerning Increased Risk of Future Harm is Sufficient to Confer Standing Lacks Merit. .......................................18

POINT II

PLAINTIFFS' PROPOSED CLASS CANNOT BE CERTIFIED BECAUSE PLAINTIFFS HAVE FAILED TO MEET THE RULE 23 REQUIREMENTS. ..................................................................22

CONCLUSION..................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                                               **Pages**

Access 4 All, Inc. v. Thirty E. 30th St., LLC,
    2006 U.S. Dist. LEXIS 96742 (S.D.N.Y. Dec. 11, 2006) ...................................................9, 13

Adarand Constructors, Inc. v. Pena,
    515 U.S. 200 (1995) ................................................................................................. 9

Assn. for Retarded Citizens of Dallas v. Dallas County Mental Health & Mental
    Retardation Center Bd. of Trustees,
    19 F. 3d 241 (5th Cir. 1994) ...................................................................................17

Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79,
    238 F.R.D. 82 (S.D.N.Y. 2006) ...............................................................................22

Baur v. Veneman,
    352 F.3d 625 (2d Cir. 2003) ...................................................................................20

Blum v. Yaretsky,
    457 U.S. 991 (1982) ................................................................................................. 9

Californians for Disability Rights, Inc. v. Cal. DOT,
    249 F.R.D. 334 (N.D. Cal. 2008) ............................................................................25

Caridad v. Metro-North Commuter R.R.,
    191 F.3d 283 (2d Cir. 1999) ..................................................................................... 6

Chapman v. Pier 1 Imps.(U.S.), Inc.,
    631 F.3d 939 (9th Cir. Cal. 2011)............................................................................. 9

Clarkson v. Coughlin,
    145 F.R.D. 339 (S.D.N.Y. 1993) .............................................................................24

Cruz v. Coach Stores, Inc.,
    1998 U.S. Dist. LEXIS 18051 (S.D.N.Y. Nov. 17, 1998)..........................................24

Disability Advocates, Inc. v. New York Coalition for Quality Assisted Living, Inc.,
    675 F.3d 149 (2d Cir. N.Y. 2012) ...............................................................14, 15, 16

Disabled in Action of Metro. N.Y. v. Trump Int'l Hotel & Tower,
    2003 U.S. Dist. LEXIS 5145 (S.D.N.Y. Apr. 1, 2003) .............................................13

Doe v. Vill. of Mamaroneck,
    462 F. Supp. 2d 520 (S.D.N.Y. 2006) ......................................................................17

East Tex. Motor Freight Sys. v. Rodriguez,
    431 U.S. 395 (U.S. 1977) ................................................................................13

Fair Hous. Council v. Montgomery Newspapers,
    141 F. 3d 71 (3d Cir. 1998) ...........................................................................17

Foley v. City of Lafayette,
    359 F.3d 925 (7th Cir. Ind. 2004)..................................................................12

Gen. Tel. Co. of the Nw. v. EEOC,
    446 U.S. 318 (1980) .......................................................................................7

Gen. Tel. Co. of the Sw. v. Falcon,
    457 U.S. 147 (1982) .......................................................................................7

Golden v. Zwickler,
    394 U.S. 103 (1969) .....................................................................................10

Green v. Borg-Warner Protective Servs. Corp.,
    1998 U.S. Dist. LEXIS 292 (S.D.N.Y. Jan. 15, 1998) ................................23

Hargrave v. Vermont,
    340 F.3d 27 (2d Cir. 2003) ..........................................................................19

Hunt v. Wash. State Apple Adver. Comm'n,
    432 U.S. 333 (1977) .....................................................................................15

Iglesias-Mendoza v. La Belle Farm, Inc.,
    2006 U.S. Dist. LEXIS 93611 (S.D.N.Y. Dec. 7, 2006) ..............................7

ILGO v. Giuliani,
    143 F. 3d 638 (2d Cir. 1998) ........................................................................14

In re Initial Pub. Offering Sec. Litig.,
    471 F.3d 24 (2d Cir. 2006) ....................................................................6, 7, 22

International Union, United Auto., etc. v. Brock,
    477 U.S. 274 (U.S. 1986) .............................................................................14

Kapiti v. Kelly,
    2008 U.S. Dist. LEXIS 64154 (S.D.N.Y. Aug. 18, 2008)...........................24

LeGrand v. New York City Transit Auth.,
    1999 U.S. Dist. LEXIS 8020 (E.D.N.Y. May 26, 1999) .............................23

Levin v. Harleston,
    966 F.2d 85 (2d Cir. 1992) ...........................................................................12

Los Angeles v. Lyons,
  461 U.S. 95 (1983) ............................................................................................10, 12

Lujan v. Defenders of Wildlife,
  504 U.S. 555 (1992) ...............................................................................................10

Martens v. Thomann,
  273 F.3d 159 (2d Cir. 2001) ...................................................................................10

McNeill v. New York City Housing Authority,
  719 F. Supp. 233 (S.D.N.Y. 1989) ...........................................................................7

Nottingham v. Finsterwald,
  2012 U.S. Dist. LEXIS 43765 (N.D. Tex. Mar. 29, 2012)......................................12

O'Shea v. Littleton,
  414 U.S. 488 (1974) ...............................................................................................10

Pecere v. Empire Blue Cross & Blue Shield,
  194 F.R.D. 66 (E.D.N.Y. 2000)...............................................................................24

Pub. Emples. Ret. Sys. v. Merrill Lynch & Co.,
  714 F. Supp. 2d 475 (S.D.N.Y. 2010) .......................................................................9

Ross v. Nikko Sec. Co. Int'l, Inc.,
  133 F.R.D. 96 (S.D.N.Y. 1990)...............................................................................24

Russo v. CVS Pharm., Inc.,
  201 F.R.D. 291 (D. Conn. 2001) .............................................................................24

Sheehan v. Purolator, Inc.,
  839 F.2d 99 (2d Cir. 1988) ........................................................................................7

Simon v. Eastern Ky. Welfare Rights Org.,
  426 U.S. 26 (1976) ..................................................................................................14

Small v. General Nutrition Cos.,
  388 F. Supp. 2d 83 (E.D.N.Y. 2005) ..................................................................14, 16

Valley Forge Christian College v. Americans United for Separation of Church & State
  454 U.S. 464 (1982) ................................................................................................21

Washington v. Wyman,
  54 F.R.D. 266 (S.D.N.Y. 1971)...............................................................................13

Whitmore v. Arkansas,
  495 U.S. 149 (1990) ..............................................................................................9, 10

**Statutes**

29 USCS §720, *et seq.*.................................................................................20, 22

34 CFR 364, *et seq.*..................................................................................20, 22

Fed. R. Civ. P. 23...................................................1, 2, 3, 10, 11, 12, 18, 26, 27

**Other Authorities**

H. Newberg, Newberg on Class Actions  (4th ed. 2002)..................................................13

## PRELIMINARY STATEMENT

In their proposed class action complaint, Plaintiffs—two disability rights advocacy organizations and two purportedly representative Plaintiffs, Tania Morales and Gregory D. Bell—allege that Defendants—the City of New York (the "City) and Mayor Michael R. Bloomberg—have failed to address the needs of individuals with disabilities in their emergency preparedness planning, in violation of federal and state law.[1] Twenty witnesses have been produced for deposition and Defendants have produced over 17,000 pages of documents.

Plaintiffs now move for certification of a class, pursuant to Rule 23 of the Federal Rules of Civil Procedure, that includes the following broad class of people:

> All persons with disabilities in the City of New York who have been and are being denied the benefits and advantages of New York City's emergency preparedness program because of Mayor Bloomberg and New York City's continuing failure to address the unique need of this population in the City's emergency planning and preparations.

With respect to the merits of the allegations in the Amended Complaint, Plaintiffs select portions of plans and snippets of testimony from which they would have the court conclude that the City fails to address the needs of the individuals with disabilities in its plans.[2] That conclusion is patently false. In fact, the well-developed record now amply demonstrates that the City's Office of Emergency Management ("OEM")—the entity charged with preparing and coordinating the City's response to man-made and natural disasters—is widely-recognized as a national leader in emergency preparedness. In conjunction with numerous governmental and

---

[1] See Plaintiffs' First Amended Complaint, Dkt. 31.
[2] Plaintiffs also submit a declaration from Dr. Peter Blanck, an expert witness retained by Plaintiffs. Declaration of Peter Blanck, dated August 31, 2012 ("Blanck Decl."), Dkt 49. While Defendants have repeatedly requested that Plaintiffs identify any experts, Plaintiffs have refused to do so, indicating that such request was premature. Defendants therefore respectfully submit that Dr. Blanck's declaration is likewise premature and should be disregarded by the Court. In any case, in apparent acknowledgement of the fact that he has not considered all relevant materials, he states only that it "appear[s]" that the City's plans do not meet the needs of individuals with disabilities. Blanck Decl. ¶37.

non-governmental stakeholders, OEM has carefully developed sophisticated operational and logistical plans and supporting resources that effectively serve the health and safety needs of all New Yorkers during emergencies, including those with disabilities. As evidenced during the recent activation of the City's Coastal Storm Plan during Hurricane Irene in August of 2011 (hereinafter, "Irene"), the City's plans are not only effective but also consistent with the requirements of federal and state law.

Clearly, there are substantial disputes about the sufficiency of Defendants' emergency preparedness that would need to be resolved at trial. However, notwithstanding Defendants' readiness to demonstrate the adequacy of the City's system-wide emergency response capabilities, Defendants respectfully submit to the Court that such a showing has been rendered unnecessary, as Plaintiffs have not—and cannot—satisfy the requirements of Rule 23 to certify the proposed class. Plaintiffs fail to establish that any of the named Plaintiffs in this action have standing to bring this suit, notwithstanding Defendants' repeated requests that they do so. That failure is fatal to the instant application to certify the proposed class because Plaintiffs are unable to demonstrate that any of the named plaintiffs adequately represent the proposed class, which purportedly consists of a large group of unidentified individuals with disabilities who are alleged to be suffering harm based upon Defendants' emergency preparedness plans.

Plaintiffs fail to identify any putative class members who have suffered any actual injury in fact arising from Defendants' conduct. This is particularly telling given the recent activation of the City's Coastal Storm Plan during Irene, which undoubtedly would have exposed any shortcomings in the City's emergency preparedness. In light of the fact that Irene triggered a City-wide evacuation order affecting than 350,000 individuals, many of them with disabilities, the fact that *none* of the putative class members suffered any injury during Irene is particularly

striking, and it strongly suggests that Plaintiffs' application for class certification, and by extension their case on the issue of liability, is without merit.

In short, (1) none of the individually named Plaintiffs have suffered or are suffering any injury in fact sufficient to confer standing and so cannot serve as proper representatives of the proposed class; (2) the existence of the proposed class is purely speculative and conjectural; and (3) Plaintiffs cannot satisfy the elements of numerosity or commonality, which they must, to prevail on this motion. Accordingly, for the reasons set forth below, the motion to certify Plaintiffs' proposed class pursuant to FRCP 23 should be denied.

## RELEVANT FACTS AND PROCEDURAL POSTURE

Plaintiffs allege Defendants have failed to "plan for the unique needs of New Yorkers with disabilities" thus "creat[ing] severe hardships for people with disabilities" that "can be life threatening." (Am. Compl. ¶2.) These supposed "glaring deficiencies" were allegedly illustrated during Irene. (Id. ¶5.) Specifically, Plaintiffs allege that during Irene, Defendants failed to: (1) adequately notify individuals with disabilities concerning Irene's approach and the potential need to evacuate; (2) provide an accessible means of transportation from the homes of individuals with disabilities to City evacuation centers; (3) make evacuation centers accessible to individuals with disabilities; and (4) provide recovery assistance to individuals with disabilities after Irene. (Id. ¶12.) Plaintiffs identify two individuals—Gregory D. Bell and Tania Morales—who allegedly suffered injuries during Irene as a result of Defendants' supposedly defective emergency planning. (Id. ¶¶53-58.)

The Plaintiffs

Plaintiff Gregory D. Bell is legally blind. (Id. ¶56.) He became aware of Irene's approach by listening to the news on television a "couple days" before the storm arrived, but "really didn't

pay that much attention to it." (Declaration of Carolyn E. Kruk, dated September 17, 2012 ("Kruk Decl."), Ex. "A" at 94:7-14.) Mr. Bell resides in an area that is not affected by flooding or high winds. (Id. 79:7-12.) He did not reside in a City evacuation zone (id. 78:7-8) and did not evacuate during Irene, as he was not concerned about and saw no need for him or his great-grandson to evacuate (id. 79:24-81:5). Indeed, Mr. Bell did not visit a City evacuation center, shelter, or disaster assistance center during Irene or in the days preceding Irene. (Id. 67:25-68:3, 68:14-20.)

Mr. Bell felt he was adequately prepared for Irene's approach; his preparations included checking his cupboards to ensure that he had sufficient food, water and other supplies for himself as well as his great-grandson. (Id. 95:5-96:16.) Mr. Bell is familiar with the City's 311 service and has used it extensively, but did not call 311 during Irene or in the days preceding the storm. (Id. 89:2-7, 95:1-2.) Mr. Bell did not take any additional precautions with respect to his daily medications because he did not need to do so (Id. 83:3-6, 83:14-15, 96:17-19); Mr. Bell takes steps to ensure that at all times he has an adequate supply of medication on hand (id. 86:18-22; 96:17-19). As a result, Mr. Bell did not run low (or run out) of any medications during Irene. (Id. 86:18-22.) After Irene, Mr. Bell did not require any recovery assistance, though he was aware that work was being done to remove debris that accumulated following the storm. (Id. 93:2-94:6.) In short, Mr. Bell does not allege any injury related to Irene. Rather, he states he is "extremely worried that [his] needs as a person with a disability would not be met" in the event of a future emergency. Declaration of Gregory D. Bell, undated ("Bell Decl."), Dkt 40, ¶17.

Plaintiff Tania Morales relies on a wheelchair for mobility. (Am. Compl. ¶52). Ms. Morales became aware of Irene's approach one or two days prior to its arrival (Kruk Decl., Ex. "B" at 13:23-25) from television and the internet (specifically, Yahoo.com and NYC.gov) (id.

14:1-14). One or two days prior to Irene's arrival, Ms. Morales accessed the City's website to determine whether her family would be required to evacuate. (Id. 14:24-15:3.) Ms. Morales found "a lot" of information on the City's website and learned that her residence was *not* located within a New York City evacuation zone. (Id. 15:4-14.) Ms. Morales did, however, take specific steps to prepare for an evacuation should the need arise. (Id. 15:19-23.) Using the City's website, Ms. Morales identified the location of a nearby evacuation center. (Id. 15:19-17:14.) The evacuation center was situated in a public school building located three or four blocks away from Ms. Morales' home and was a school that she had visited previously and knew to be wheelchair accessible. (Id. 21:24-22:17, 25:7-8, 29:24-30:1.)

Prior to Irene, Ms. Morales felt prepared. (Id. 15:22-23.) The day before Irene arrived, Ms. Morales and her father visited the nearby evacuation center because she "wanted to make sure that the site was accessible." (Id. 23:18-24:16; 36:16-17.) That is, she visited the evacuation center in anticipation of a possible future evacuation—not as a result of a required emergency evacuation of her home. (Id. 24:4-8.) Once she and her father arrived outside the evacuation center, Ms. Morales saw a sign indicating a wheelchair accessible entrance. (Id. 35:9-17.) Indeed, she saw a cement ramp leading to a door to the evacuation center. (Id. 34:4-18.) However, Ms. Morales was unable to reach the ramp leading to the evacuation center because a fence blocked her access to the accessible entrance. (Id. 36:5-37:25.) She was unsure whether the gate simply needed to be unlocked with a key. (Id. 37:6-25.) Regardless, neither Ms. Morales nor her father sought any help, such as asking a shelter worker to open the gate. (Id. 38:12-15, 38:20-39:1.) Ms. Morales did not look for another way to access the ramp. (Id. 38:10-11.) In fact, Ms. Morales and her father did not discuss the locked gate. (Id. 39:13-15.) Instead, after spending a few minutes at the locked gate, Ms. Morales and her father returned home. (Id. 39:23-40:4.) In

short, Ms. Morales does not allege any injuries during Irene aside from an inability to access the accessible entrance at this evacuation center. However, she states in her declaration that she is "extremely worried about what would happen" during a future emergency. Declaration of Tonia Morales, dated August 29, 2012, Dkt 39, ¶12.

Aside from Mr. Bell and Ms. Morales, the Amended Complaint is devoid of any reference to any specific individuals who claim to have suffered or are suffering any injuries in connection with the City's emergency planning and preparedness, during Irene or any other emergency event.

<u>The Putative Class Members</u>

Plaintiffs identified seven individuals who they contend are putative members of a class of individuals who suffered injuries in connection with Defendants' emergency preparedness efforts: Ronnie Ellen Raymond, Jennifer Halbert, Valerie Buckner, Jean Ryan, Christina Curry, Mary Connor, and Edith Prentiss. As is clear from their deposition testimony and declarations, none of the putative class members have suffered or are suffering any injuries in connection with Defendants' emergency preparedness planning efforts, during Irene or any other emergency event. <u>See</u> Kruk Decl., Exs. "C" to "G".

## STANDARD OF REVIEW

Plaintiffs moving for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure must satisfy four prerequisites: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a); <u>see</u>, <u>e.g.</u>, <u>In re Initial Pub. Offering Sec. Litig.</u>, 471 F.3d 24, 32 (2d Cir. 2006) (hereinafter "<u>In re IPO</u>"); <u>Caridad v. Metro-North Commuter R.R.</u>, 191 F.3d 283, 291 (2d Cir. 1999), *abrogated in part on other grounds by* <u>In re IPO</u>, 471 F.3d 24 (2d Cir. 2006). On a motion for class certification, the moving party bears the burden of proving that all

of the requirements of Rule 23 are met. <u>McNeill v. New York City Housing Authority</u>, 719 F. Supp. 233, 252 (S.D.N.Y. 1989). Thus, a representative party may sue on behalf of putative class members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; an (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

The purpose of Rule 23 is to "effectively 'limit the class claims to those fairly encompassed by the named plaintiff's claims.'" <u>Gen. Tel. Co. of the Sw. v. Falcon</u>, 457 U.S. 147, 156 (1982) (quoting <u>Gen. Tel. Co. of the Nw. v. EEOC</u>, 446 U.S. 318, 330 (1980)). Thus, satisfaction of Rule 23(a)'s requirements cannot be presumed; rather, trial courts must conduct a "rigorous analysis" to determine whether plaintiffs have met their burden. <u>Id.</u> at 160-61; <u>see also, e.g.</u>, <u>In re IPO</u>, 471 F.3d at 33; <u>Sheehan v. Purolator, Inc.</u>, 839 F.2d 99, 103 (2d Cir. 1988).

In <u>In re IPO</u>, the Second Circuit significantly changed the standards for determining whether a party had met its burden for class certification. <u>See id.</u> at 41-42; <u>see also Iglesias-Mendoza v. La Belle Farm, Inc.</u>, 06 Civ. 1756, 2006 U.S. Dist. LEXIS 93611, at *2 (S.D.N.Y. Dec. 7, 2006) (observing that <u>In re IPO</u> "represents a watershed in this Circuit's jurisprudence and changes the rules for certifying classes"). In doing so, the Court analyzed both the 2003 amendments to Rule 23 and the case law of other Circuits. <u>In re IPO</u>, 471 F.3d at 38. The specific changes to Rule 23 that the Court discussed were that class certification: (1) may no longer be conditional and (2) must now be made "at an early practicable time," instead of "as soon as practicable." <u>Id.</u> at 39. The Court noted that these amendments "permit a more extensive inquiry into whether Rule 23 requirements are met than was previously appropriate." <u>Id.</u>

The Court emphasized that the "important point" of the Rule 23 analysis is ensuring all

requirements are actually "met, not just supported by some evidence," id. at 33, and held that it is no longer sufficient for plaintiffs seeking class certification to make "some showing" that Rule 23 requirements have been satisfied, id. at 42. Rather, the underlying facts relevant to a particular Rule 23 requirement must be "established," and "the district judge must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." Id. at 41.

## ARGUMENT

### POINT I

### PLAINTIFFS' PROPOSED CLASS CANNOT BE CERTIFIED BECAUSE PLAINTIFFS LACK STANDING.

Both the organizational and individually-named Plaintiffs lack standing to sue in this action, which is a threshold question antecedent to class certification. Significantly, Plaintiffs filed an Amended Complaint in an effort to bolster their position on standing. However, their amended pleading merely reiterates sweeping and conclusory allegations of supposed deficiencies in virtually every conceivable aspect of the City's emergency management program, but fails to provide concrete examples of injuries sustained by any of the organizational or individual Plaintiffs during Irene, or any other emergency event. Accordingly, Plaintiffs fail to establish that any of the named Plaintiffs can serve as adequate class representatives in this action. For this reason, and for the reasons discussed below, Plaintiffs' motion for class certification should be denied.

A.  Standing is a Threshold Requirement to Class Certification.

While interrelated with the "commonality" and "typicality" inquiries involved in a class certification, standing is a threshold question, antecedent to class certification.  See Pub. Emples. Ret. Sys. v. Merrill Lynch & Co., 714 F. Supp. 2d 475, 480-481 (S.D.N.Y. 2010); 1 H. Newberg, *Newberg on Class Actions* §§ 2.9 (4th ed. 2002). If there is no case or controversy, then plaintiffs, and the proposed class they seek to represent, do not have standing "to seek forward-looking relief." Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 210 (1995). "Ensuring that standing requirements are met by each plaintiff in each lawsuit brought under the ADA enables courts to ensure that the ADA is not being abused, but rather is having its intended effect of allowing disabled persons to participate fully in society." Access 4 All, Inc. v. Thirty E. 30th St., LLC, 2006 U.S. Dist. LEXIS 96742, at *35-36 (S.D.N.Y. Dec. 11, 2006). It is plaintiffs' burden to establish standing.  Whitmore v. Arkansas, 495 U.S. 149, 158 (1990).

B.  The Individually Named Plaintiffs Lack Standing.

A litigant must have experienced an actual injury in fact vis-a-vis every claim in the complaint. See Blum v. Yaretsky, 457 U.S. 991, 999 (1982) ("It is not enough that the conduct of which the plaintiff complains will injure *someone*...Nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject."). As a corollary principle, in the ADA context, plaintiffs have standing to challenge only those alleged violations that affect *their particular disability*. See e.g., Chapman v. Pier 1 Imps.(U.S.), Inc., 631 F.3d 939, 947 (9th Cir. Cal. 2011) ("standing requires that the suit be limited to barriers related to plaintiff's particular disability); Access 4 All, Inc. v. Thirty E. 30th St., LLC, 2006 U.S. Dist. LEXIS 96742, at *10-11 (S.D.N.Y. Dec. 11, 2006) (plaintiffs bringing ADA claims to remove

barriers to access have standing to challenge only those violations affecting their particular disabilities);

Moreover, the proposed class representatives must have individual standing at the time the class certification determination is made. <u>Martens v. Thomann</u>, 273 F.3d 159, 173 (2d Cir. 2001). If none has standing, then none may seek relief on behalf of himself of any other member of the class. <u>O'Shea v. Littleton</u>, 414 U.S. 488, 494-95 (1974). "Allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be 'certainly impending' to constitute injury in fact." <u>Whitmore</u>, 495 U.S. at 148 (citation omitted). Standing to seek declaratory relief also requires that plaintiffs establish that there is a case and controversy, by showing the likelihood of future injury to them which is of "sufficient immediacy and reality." <u>Lyons</u>, 461 U.S. at 104 (<u>quoting</u> <u>Golden v. Zwickler</u>, 394 U.S. 103, 109 (1969)).

In short, there are three constitutionally-mandated requirements for standing. A plaintiff must show an "injury in fact" that is "concrete and particularized" and "actual or imminent, not "conjectural or hypothetical." <u>Lujan v. Defenders of Wildlife,</u> 504 U.S. 555, 560 (1992). The plaintiffs must then show a "causal connection" between the injury and the challenged action. <u>Id</u> at 560-61. Finally, plaintiffs must show that it "is 'likely,' as opposed to merely 'speculative' that the injury will be redressed by a favorable decision." <u>Id.</u>

i.    <u>Plaintiff Gregory Bell Lacks Standing.</u>

Plaintiff Gregory Bell has failed to allege in the Amended Complaint, or establish through his deposition testimony or sworn declaration, that he suffered any legally cognizable injury that would confer standing in this case. Neither the Amended Complaint nor Mr. Bell's declaration contain any concrete allegations of harm; Mr. Bell knew about the storm, knew he did not live in an evacuation zone and did not need to evacuate. (Kruk Decl., Ex "A" at 67:25-

68:3, 68:14-20, 78:7-8, 79:24-81:5, 94:7-14.) He was adequately prepared for the storm and suffered no injuries whatsoever. (Id. 95:5-96:16.) He claims only that he is "extremely concerned" that he "*would* not be able to evacuate quickly or safely" in the event of a future emergency. (Bell Decl. ¶9, emphasis added.)

ii.    <u>Plaintiff Tania Morales Lacks Standing.</u>

Plaintiff Tania Morales, likewise fails to establish standing to bring this suit on behalf of the unidentified class members. Ms. Morales' claims in the Complaint (as amended by her deposition testimony, and later, the Amended Complaint[3]) are predicated solely on the allegation that the ramp to the admittedly accessible entrance at a nearby evacuation center—which she visited as a precautionary measure a day before Irene arrived—was blocked by a gate. This particular experience is wholly unconnected to the remainder of the allegations in the Amended Complaint, such as pre-emergency notification, accessible transportation, availability of life sustaining medication and medical goods, post-emergency debris removal, accessible temporary housing, and others. This pleading deficiency is highlighted by Ms. Morales' deposition testimony that she suffered *no* injury in connection with Irene. <u>See</u> Kruk Decl. Ex. B at 49:2-10.

Ms. Morales received ample notification of the approaching storm. from television and the internet (Id. 14:1-14) She accessed the City's website in advance of Irene, where she learned, *inter alia*, that her home was not located within an evacuation zone. (Id. at 14:24-15:3.) She also took specific steps to prepare for Irene (id. at 15:19-23) and indeed felt prepared (id. at 15:22-23, 21:8-12).

Ms. Morales' claim that a gate separated the accessible entrance from the sidewalk at the evacuation center is insufficient to confer standing. Ms. Morales visited the site not because she

---

[3] Ms. Morales alleges in the original Complaint that shelter workers searched in vain for the keys to the gate to the schoolyard for ten (10) minutes. Plaintiff later testified at her deposition that neither she nor her father spoke to anyone at the shelter to request that the sidewalk gate be opened. Kruk Decl. Ex. "B" 38:12-15, 38:20-39, 39:23-40.

wished to evacuate, but rather as a precautionary measure, in the event she would later be required to evacuate. (Id. at 23:18-21.) When she found that a gate blocked her access to the ramp, she did not investigate whether an alternative means of access to the ramp existed, nor did she speak to a shelter volunteer or take any other affirmative steps to gain access to the evacuation center. (Id. at 38:12-15, 38:10-39:1.)

In short, Ms. Morales suffered no cognizable injury-in-fact in connection with Irene or as a result of the City's emergency preparedness plans. In fact, her own testimony confirms that the City's evacuation center had a wheelchair accessible entrance ramp, and the fact that the gate had not yet been opened by a shelter volunteer was apparently an oversight. That is insufficient to demonstrate that Ms. Morales is likely to experience discrimination in an emergency evacuation at some point in the future. Neither would such an allegation state a claim under the ADA, as it would constitute, at most, mere negligence on the part of a shelter volunteer. See, e.g., Foley v. City of Lafayette, 359 F.3d 925, 930-931 (7th Cir. Ind. 2004) ("Isolated acts of negligence by a city employee do not come within the ambit of discrimination against disabled persons proscribed by the ADA"); Nottingham v. Finsterwald, 2012 U.S. Dist. LEXIS 43765 (N.D. Tex. Mar. 29, 2012) ("Negligent acts do not come within the scope of the A.D.A.").

Similarly, Ms. Morales' anxiety about future indeterminate emergencies does not confer standing. See Los Angeles v. Lyons, 461 U.S. 95, 107, 103 S. Ct. 1660, 75 L. Ed. 2d 675 at n.8 (1983) ("[i]t is the reality of the threat of [impending] injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions."); Levin v. Harleston, 966 F.2d 85, 90 (2d Cir. 1992) (standing requires a showing of a real or immediate threat that the plaintiff will be wronged again). In short, by failing to establish any injury in fact, both individually named Plaintiffs have concomitantly failed to demonstrate that they are adequate representatives of the

proposed class. See Washington v. Wyman, 54 F.R.D. 266, 271-272 (D.N.Y. 1971) ("A plaintiff without a claim, should not, simply by making class action allegations, be allowed to bring suit.").

      iii.    Even if Plaintiff Morales Has Standing, it is Only Co-Extensive with Alleged Violations Specific to Her Particular Disability.

Even if Ms. Morales had sufficiently alleged an injury-in-fact, and she has not, she would nonetheless have standing to challenge *only* those alleged violations *specific her particular disability*. See Access 4 All, 2006 U.S. Dist. LEXIS 96742, at *10-11; Disabled in Action, 2003 U.S. Dist. LEXIS 5145 at *29-30 (April 1, 2003, S.D.N.Y.). It is axiomatic that a plaintiff must have suffered the same injury as the class members s/he seeks to represent. See East Tex. Motor Freight Sys. v. Rodriguez, 431 U.S. 395, 403 (U.S. 1977) ("class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members.")(citations omitted). Here, the only alleged violation that has any relationship to Ms. Morales' disability is the existence of the alleged closed or locked gate that blocked her access to the accessible entrance ramp at a nearby City evacuation center. Accordingly, should the Court determine that this allegation suffices to confer standing, Ms. Morales' suit could only proceed vis a vis this allegation alone and the class definition would need to be narrowly tailored to the limited issue of the ability to gain entry to an evacuation center.[4] See id. However, even if Plaintiff Morales were able to establish standing on this limited issue, a class nonetheless cannot be certified, because plaintiffs have failed to meet their burden of satisfying the Rule 23 requirements, as set forth in the subsequent point heading.

---

[4] While Mr. Bell's standing would likewise extend only to allegations that pertain to his particular disability (blindness), the fact that he has utterly failed to allege any facts that would even remotely suggest a concrete injury renders any application of this principle to his situation meaningless.

C.  The Organizational Plaintiffs Lack Standing.

An organization can establish standing to sue on behalf of its members if it can demonstrate that one of its members has standing.  See International Union, United Auto., etc. v. Brock, 477 U.S. 274, 282 (U.S. 1986); Small v. General Nutrition Cos., 388 F. Supp. 2d 83, 96 (E.D.N.Y. 2005).  However, because associational standing exists only insofar as organization members have standing, associational standing may not be broader or more extensive than the standing of the organization's members.  See Small, 388 F. Supp 2d. at 98 (finding disability organization did not have associational standing where only one individually named plaintiff was included in the complaint, and the complaint failed to state that plaintiff was an organization member).  Moreover, as the Second Circuit has recently held in Disability Advocates, Inc. v. New York Coalition for Quality Assisted Living, Inc., advocacy organizations that are not traditional membership organizations must identify constituents with sufficient indicia of membership in order to establish standing to sue. 675 F.3d 149 (2d Cir. Apr. 6, 2012).

Alternatively, an organization may establish standing to sue on its own behalf, but in order to do so, it must satisfy the same constitutional standing test that applies to individuals.  See ILGO v. Giuliani, 143 F. 3d 638, 649 (2d Cir. 1998).  To meet this test, the organization must prove that they have suffered an injury in fact, that the injury and the challenged conduct are causally connected, and that the injury will likely be redressed by a favorable decision.  See Lujan, 504 U.S. at 541. An "abstract concern" or "special interest" concerning a subject that could be affected by adjudication of the pending case is not sufficient. Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 40 (1976).

i.    <u>The Organizational Plaintiffs Fail to Establish Associational Standing.</u>

Here, neither organizational Plaintiff establishes standing because none of their members have standing, and the organizations lack independent standing. First, Plaintiff Center for Independence of the Disabled of New York ("CIDNY") has no members. (Kruk Decl., Ex. "H" at 127:14-15.) Thus, CIDNY does not, by definition, have standing to sue on behalf of its members, because it has none.

Second, while courts have occasionally found that non-membership organizations have standing, those cases are inapposite. For example, in the recent Second Circuit case <u>Disability Advocates v. New York Coalition for Quality Assisted Living</u>, a nonprofit provider of services to individuals with mental illness, operating under a contract pursuant to federal law, brought suit on behalf of its "constituents" against various state agencies, alleging that defendants were violating Title II of the ADA by failing to provide mental health treatment in the most integrated setting appropriate to the needs of individuals with disabilities. 675 F.3d at 157 (hereinafter, "<u>DAI</u>"). While recognizing that non-membership organizations may establish standing to sue in a representative capacity when the association can demonstrate that its constituency possesses the requisite "indicia of membership," the Court determined that the plaintiff organizations had failed to do so, finding "scant evidence in the record that the individuals with mental illness whom DAI purports to represent have the power to elect its directors, make budget decisions, or influence DAI's activities or litigation strategies." Id. at 158-59, citing <u>Hunt v. Wash. State Apple Adver. Comm'n</u>, 432 U.S. 333, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977).

The situation here is analogous. CIDNY is a New York State Independent Living Center—created pursuant to state and federal law and operating under state and federal

contracts—that advocates for and provides services to individuals with disabilities.[5] It now purports to bring suit on behalf of its constituents for alleged violations of Title II of the ADA. (Kruk Decl., Ex. "H" at 127:2-129:2.) In addition, CIDNY's constituents do not control the election of the board of directors (id. 134:13-135:16) or the organization's activities (id. 135:17-19), nor did they approve the instant litigation (id. 135:20-36:4). Accordingly, because CIDNY is not a membership organization (id. 127:14-15), and because its constituents do not possess any of the indicia of membership identified by the Court in DAI, they cannot establish associational standing.

BCID is likewise unable to establish associational standing. Although BCID's former Executive Director, Marvin Wasserman, testified that the organization maintains a small group of members (Kruk Decl., Ex. "I" at 67:17-22), Plaintiffs have not – and in fact refuse – to indentify any members by name.[6] More importantly, BCID does not allege that any BCID member has suffered any injury in the Amended Complaint. Mr. Wasserman also testified that he was unaware of any BCID member who experienced an injury during Irene. (Id. 92:9-12.) Moreover, neither Ms. Morales nor Mr. Bell are members of BCID. Thus, even if either of those individual Plaintiffs could establish standing—which they cannot—that standing would not give rise to standing for BCID. See Small, 388 F. Supp 2d at 98.

ii.    Organizational Plaintiffs Fail to Demonstrate that Defendants' Purportedly Discriminatory Policies Necessitated any Action that They Otherwise Would Not Have Undertaken.

Although Plaintiffs' allege that they "expended resources to advocate for [their] constituents" (Plaintiffs' Memo. at p. 9) in response to Defendants' failures to adequately

---

[5] New York State Independent Living Centers operate under the ambit of the New York State Independent Living Council, which was created pursuant to Title VII of the Rehabilitation Act of 1973 and its implementing regulations. See 29 USCS § 720, et seq., 34 CFR 364, et seq.

[6] Attorneys for Plaintiffs have repeatedly objected to providing BCID's membership roll, most recently in a letter dated September 12, 2012, wherein they assert a constitutional "right to privacy."

prepare for the needs of individuals with disabilities during an emergency, that allegations is insufficient to establish standing.   In short, Plaintiffs cannot demonstrate that Defendants' purportedly discriminatory policies necessitated any action that they otherwise would not have undertaken.

Courts routinely hold that providing advocacy in response to allegedly illegal activities by Defendants does not confer standing. See Fair Hous. Council v. Montgomery Newspapers, 141 F. 3d 71, 78 (3d Cir. 1998) (An advocacy group's allocation of resources to review alleged discrimination did not confer standing because the organization failed to prove that it would not have undertaken the same actions in the absence of the allegedly illegal acts by the defendants.); Assn. for Retarded Citizens of Dallas v. Dallas County Mental Health & Mental Retardation Center Bd. of Trustees, 19 F. 3d 241, 244 (5th Cir. 1994) ("the mere fact that an organization redirects some of its resources to litigation and legal counseling in response to actions or inactions of another party is insufficient to impart standing…."); Doe v. Vill. of Mamaroneck, 462 F. Supp. 2d 520, 542 (S.D.N.Y. 2006) (organization lacked standing because its "entire reason for being is to pursue the sort of advocacy…that it has pursued in this case").

Both CIDNY and BCID are Independent living Centers authorized by federal law. See 29 USCS § 720, et seq., 34 CFR 364, et seq. Their core activities include, inter alia, "disability rights advocacy; peer support; resource information and referral; housing advocacy; independent living skills consultation; government benefits information and advocacy; youth services; as well as information on the civil rights and responsibilities of people with disabilities." See e.g., http://www.bcid.org/mission.html. Both Ms. Dooha and Mr. Wasserman testified that the outreach and advocacy services that CIDNY and BCID provided to individuals prior to and

during Irene were precisely the kind and type of services that they routinely provide as part of their respective organizational missions.

For example, CIDNY regularly helps prepare its constituents for emergencies by providing community education about what individuals with disabilities might need to do in the event of an emergency, participating in workshops and community meetings, and helping individuals prepare "go-kits." (Kruk Decl. Ex. "H" at 122:9-24, 123: 17-23.) CIDNY also attended "many, many" meeting organized by OEM's Special Needs Task Force, reviewed emergency materials for OEM, and assisted in training evacuation center volunteers. (Id. at 125:3-126:3.) Ms. Dooha also made clear that those are part of CIDNY's ongoing activities. (Id. 126:4-6.) Similarly, Mr. Wasserman confirmed that advocacy and support are central to BCID's mission and purposes. He testified that BCID communicates with and provides information to consumers in advance of emergencies. (Kruk Decl. Ex. "I" at 66:15-67:14.) Thus, the activities in which the organizational plaintiffs are engaging—and which they claim have been necessitated by Defendants' alleged failures—are, in fact, the kinds of activities for which these organizations *were created*. Accordingly, as is clear from the controlling caselaw, Plaintiffs' allegation in the Complaint that they are "expend[ing] resources to advocate for [their] constituents" in purported response to Defendants' conduct, even if accepted as true, is not sufficient to confer standing. See e.g., Doe, 462 F. Supp. 2d at 542.

D. Plaintiffs' Argument That Generalized Anxiety Concerning Increased Risk of Future Harm is Sufficient to Confer Standing Lacks Merit.

In tacit recognition that they have thus far failed to identify individuals who suffered harm during Irene or any other emergency situation, Plaintiffs now argue in support of their motion to certify the proposed class that Plaintiffs have standing because their special needs, coupled with their own general lack of individual preparedness, creates "fear and apprehension

regarding the increased risk they face on a daily basis." In support of this flawed argument, Plaintiffs rely primarily on two Second Circuit cases, both of which are inapposite.

Plaintiffs initially rely on Hargrave v. Vermont, 340 F.3d 27 (2d Cir. 2003). In that case, the Court considered an ADA challenge to a state statute that established a procedure for involuntarily medicating certain individuals—who were both mentally ill and incarcerated—in contravention of executed durable powers of attorney that specified the patients' refusal of same. Id. at 31. 32. Although the Court determined that plaintiff had established standing to bring suit, the case presented the Court with a strikingly different factual scenario than the one presented here. There, plaintiff—who had a history of both confinement and being involuntarily medicated—had executed a durable power of attorney refusing certain forms of treatment. She then brought suit to challenge the validity of a statute that had already been passed, and which the state of Vermont was actively seeking to enforce. Thus, plaintiff could colorably claim that she would suffer harm by the impending enforcement of a state law that expressly provided for the curtailment of her rights.

Here, there is no such "impending threat of enforcement." Unlike the Defendants in Hargrave, Defendants in this case do not seek enforcement of any statute containing provisions that would necessarily curtail the rights of individuals with disabilities. Indeed, there is *nothing* in the records to suggest any such looming conflict between state actors and individuals with disabilities. Rather, OEM's entire *modus operandi* is focused on achieving the very same goals that Plaintiffs are now pursuing through this litigation; to wit, emergency preparedness for all New Yorkers. Moreover, unlike the impending harm alleged in Hargrave—involuntary medication against plaintiff's express wishes—the harm alleged here is, in fact, entirely speculative. Plaintiffs allege mere anxiety that they might be harmed should a catastrophic event

require them to evacuate—which anxiety apparently springs primarily from a perceived lack of knowledge due to a failure to inform themselves of the City's widely available (and accessible) emergency information for individuals with disabilities.

Plaintiffs also seek support from Baur v. Veneman, 352 F.3d 625, 634 (2d Cir. 2003). There, the Court was again presented with a starkly different factual background. In that case, a plaintiff brought suit to challenge the federal government's refusal to label meat derived from "downed cattle." Plaintiff alleged that such refusal exposed him to a greater risk of illness from consuming meat contaminated by Bovine Spongiform Encephalopathy, which causes a fatal neuro-degenerative disease. Id. at 627-28. In finding that plaintiff had established standing, the Court held that an "enhanced risk of disease transmission" could give rise to standing, but expressly limited its holding to the context of food and drug safety suits, where the plaintiff alleges exposure to potentially harmful products. Id. at 633. Critically, the Court took care to emphasize that it did not "decide as a matter of law whether enhanced risk generally qualifies as sufficient injury to confer standing, nor…purport to imply that [it] would adopt such a broad view." Id. at 634.

As the instant case clearly does not involve food and drug safety, the limited holding in Baur should not be applied here. Indeed, confining the above standing formulation to the context of consumer safety suits is a sensible limitation, in light of the fact that such cases uniquely involve a sweeping federal regulatory framework intended to keep "impure and adulterated food from the channels of commerce." Id. at 634. Here, Plaintiffs are not challenging the laxity of any government regulation intended to keep unsafe products out of the chain of distribution. Instead, they allege that Defendants would fail to act appropriately at some future and indeterminate point in time when confronted with an emergency situation.

Simply put, Plaintiffs have failed to establish that any named Plaintiff or any members of the proposed class of approximately 900,000 disabled New Yorkers have suffered any injury in connection with New York City's emergency plans. Instead, they have opted to rely on declarations from individuals who express a generalized fear of hypothetical injuries in the event of a future emergency.[7] The failure is placed in stark relief in light of the fact that (1) organizational plaintiffs concededly have access to and information from *thousands* of individuals with disabilities who reside in New York City and (2) the City activated its Coastal Storm Emergency Plan approximately one year ago in response to the approach of Hurricane Irene, which necessitated an evacuation order that affected over 350,000 individuals. While Plaintiffs are understandably invested in ensuring that the needs of individuals with disabilities are adequately accounted for during emergencies, that generalized concern for the well-being of others is not sufficient to confer standing to bring suit. Were it sufficient, the standing doctrine would be expanded almost beyond recognition, and would unreasonably confer standing on any individual who expresses a concern or anxiety that a particular government program or service will not adequately address their needs or interests at some future date. That articulation of the doctrine would treat federal courts as "merely publicly funded forums for the ventilation of public grievances," which the Supreme Court has expressly disallowed. See Valley Forge Christian College v. Americans United for Separation of Church & State, 454 U.S. 464, 473 (1982). Accordingly, and for the reasons set forth above, Plaintiffs lack standing to bring this action and cannot serve as adequate representatives of any putative class.

---

[7] That avowed lack of knowledge and/or individual preparedness need not be contested for the purposes of Defendants' opposition because such allegations, even if accepted as true, are insufficient to confer standing. However, it should be noted that those allegation are not indicative of any inherent shortcoming in Defendants' emergency plans. Indeed, should this action proceed to trial, Defendants will demonstrate that to the extent the individually named Plaintiffs and putative class members were unaware of the available resources for individuals with disabilities prior to Irene, that lack of preparedness was caused by those individuals' failure to avail themselves of widely available resources.

## POINT II

## PLAINTIFFS' PROPOSED CLASS CANNOT BE CERTIFIED BECAUSE PLAINTIFFS HAVE FAILED TO MEET THE RULE 23 REQUIREMENTS.

In order for a proposed class to be certified, a plaintiff must set forth "enough evidence, by affidavits, documents, or testimony," to satisfy all of the Rule 23(a) requirements, as well as the Rule 23(b)(3) predominance requirement. In re IPO, 471 F.3d at 41; cf. Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79, 238 F.R.D. 82, 98 (S.D.N.Y. 2006) (noting that the district court must go "beyond the pleadings" in deciding whether to certify a class). Plaintiffs have failed to make the required showing to maintain a class under Rule 23, because they cannot establish the existence of a class of individuals who have been harmed by the City's alleged failure to adequately address the needs of individuals with disabilities during emergencies. Instead, they apparently intend to rely solely upon statistics concerning the number of individuals with disabilities in New York City as a whole, without connecting anyone within that class of people to any actual violation, which fails to satisfy both the numerosity and commonality requirements of Rule 23.

Plaintiffs manifestly fail to identify any discernible group of individuals who have been injured by Defendants' supposedly defective planning, despite repeated opportunities to do so. Instead, Plaintiffs identify seven individuals with disabilities who reside in New York City, all of whom aver that they are fearful about what would happen to them in a future, hypothetical emergency situation. This glaring omission is made more significant in light of the fact that the two organizational Plaintiffs in this action have daily contact with many thousands of individuals with disabilities who reside in New York City. Despite months of discovery, the organizational

Plaintiffs have not succeeded in identifying a single "consumer" of their services who suffered injury during Irene or any other emergency. See Kruk Decl., Ex. "C" to "G".

Instead, Plaintiffs urge the Court to rely upon statistical data concerning the total number of individuals with disabilities residing in New York City in making its determination on the instant motion. Plaintiffs contend that "there are nearly nine hundred thousand people with disabilities living in the City of New York" and that "organizational plaintiff CIDNY alone serves 14,000 consumers with disabilities in New York." (Pl. Memo p. 13.) They next assert, without any analysis whatsoever, that their proposed class meets the numerosity requirement. That faulty reasoning is presumably premised on the assumption that by simply by asserting the existence of "qualified individuals with a disability," they have demonstrated the existence a proposed class of individuals *who have been aggrieved* by supposedly discriminatory conduct. As the prevailing caselaw demonstrates, that premise is fatally flawed.

Where a plaintiff fails present admissible evidence to the Court demonstrating the existence of a class of individuals who suffered *an actual violation*, a motion for certification of a class should properly be denied. See LeGrand v. New York City Transit Auth., 1999 U.S. Dist. LEXIS 8020 (E.D.N.Y. May 26, 1999) (numerosity requirement not satisfied where plaintiffs failed to connect putative class members with any concrete deprivation and finding that "[o]ther than some of the named plaintiffs...plaintiffs have provided no evidence that any other members of the purported class had any contact with [defendants] that resulted in [a violation]...[which] does not provide a basis for a reasonable estimate of the number of individuals contained in the proposed class"); Green v. Borg-Warner Protective Servs. Corp., 1998 U.S. Dist. LEXIS 292 (S.D.N.Y. Jan. 15, 1998) (rejecting census data on overall population of shelter residents as non-probative of the existence of a class because plaintiffs failed to link the population data to an

actual violation and finding that "despite the thousands of individuals who have sought refuge in the shelters at issue...plaintiffs have failed to come forward with proper evidence of more than twelve incidents..."); Ross v. Nikko Sec. Co. Int'l, Inc., 133 F.R.D. 96, 97 (S.D.N.Y. 1990) (finding statistics unpersuasive without concrete connection to the supposedly unlawful discriminatory practices). Here, Plaintiffs simply assert that a large number of individuals with disabilities reside in New York City, the City failed to address their needs, and, *ipso facto*, a large class of unidentified and aggrieved individuals exists, such that joinder of their claims would be impracticable. As the precedent makes clear, this conclusory assertion is without merit.

Moreover, where plaintiffs provide the Court with nothing more that pure speculation about the size of the proposed class, an application for class certification is properly denied. See Kapiti v. Kelly, 2008 U.S. Dist. LEXIS 64154 (S.D.N.Y. Aug. 18, 2008) (numerosity cannot be founded upon speculation without factual support.); Russo v. CVS Pharm., Inc., 201 F.R.D. 291, 295 (D. Conn. 2001) (finding numerosity cannot be inferred...the fact that a plaintiff is "not the only victim" of alleged unlawful conduct does not mean that other victims are numerous); Pecere v. Empire Blue Cross & Blue Shield, 194 F.R.D. 66, 70 (E.D.N.Y. 2000) (plaintiffs have failed to proffer any evidence to permit a reasonable estimate of the number of persons who fit within the proposed class."); Cruz v. Coach Stores, Inc., 1998 U.S. Dist. LEXIS 18051, at *11-12 (S.D.N.Y. Nov. 17, 1998) ("conclusory statement that class 'is so numerous that joinder is impracticable' is insufficient"); Clarkson v. Coughlin, 145 F.R.D. 339, 347 (S.D.N.Y. 1993) (while there is "no magic minimum number that breathes life into a class," there must be something within the record from which it can be inferred that a class does exist).

Here, Plaintiffs state flatly that thousands of individuals with disabilities residing in New York City are unlawfully being denied benefits based upon discriminatory treatment by

Defendants. However, without some reasonable estimate of the number of individuals who are actually being adversely affected by the supposedly unlawful treatment, the class cannot be certified, because there is no indication that joinder of aggrieved individuals is impracticable. That infirmity is especially true here, where Plaintiffs have identified only nine individuals (including Ms. Morales and Mr. Bell) who even allege that they are experiencing a violation. Cf., Californians for Disability Rights, v. Cal. DOT, 249 F.R.D. 334, 346 (N.D. Cal. 2008) (relied upon by Plaintiffs but recognizing that "precedent suggests that 20-40 class members is the 'grey area' for numerosity"). In short, although they purport to identify myriad areas of alleged deficiencies in the City's planning and preparedness, the most they have actually demonstrated is that an accessible ramp at an evacuation center was allegedly located behind a closed gate a day before Irene arrived—a single instance of negligence. That allegation is simply insufficient to establish the existence of a class of aggrieved individuals.

## CONCLUSION

Based on the foregoing, Defendants respectfully request that Plaintiffs' motion for class certification be denied, and for such other relief as the Court deems just and proper.

Dated:      New York, New York
            September 17, 2012

                                MICHAEL A. CARDOZO
                                Corporation Counsel of the City of New York
                                Attorney for Defendants
                                100 Church St., Rm. 2-106
                                New York, NY 10007


            By:     _____
                                Martha A. Calhoun
                                Mark G. Toews
                                Carolyn E. Kruk
                                Assistant Corporation Counsel