**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- x
BROOKLYN CENTER FOR : Case No. 11-cv-6690 (JMF)
INDEPENDENCE OF THE DISABLED, a
nonprofit organization, CENTER FOR :
INDEPENDENCE OF THE DISABLED, **PLAINTIFFS' REPLY**
NEW YORK, a nonprofit organization, : **MEMORANDUM OF POINTS**
GREGORY BELL, an individual, and **AND AUTHORITIES IN**
TANIA MORALES, an individual, : **SUPPORT OF PLAINTIFFS'**
**MOTION FOR CLASS**
: **CERTIFICATION**
        **Plaintiffs,**
:
        **-against-**
:

MICHAEL R. BLOOMBERG, in his official
capacity as Mayor of the City of New York, :
and the CITY OF NEW YORK,
:
        **Defendants.**
:
------------------------------------------------------- x

**Table of Contents**

I. Introduction ................................................................................................................ 1

II. Argument .................................................................................................................... 2

    A. Plaintiffs Have Standing Based Both On Current And Future Harm. .................... 2

        1. Plaintiffs Have Standing Based On The Current Denial Of Meaningful Access To The Emergency Planning Program. .......................................... 2

        2. Plaintiffs Need Not Wait For Catastrophic Injury Or Death Before Bringing Suit. .............................................................................................. 4

    B. Plaintiffs BCID And CIDNY Have Standing To Sue Based On Their Own Efforts In The Field, And The Potential Harm To Their Constituents. .............................. 5

        1. BCID And CIDNY Have Direct Standing. .................................................. 5

        2. BCID And CIDNY Have Representative Standing. ................................... 6

    C. Plaintiffs May Represent A Cross-Disability Class Because This Case Challenges Plans Of General Applicability. ............................................................................. 8

    D. Plaintiffs Have Presented Sufficient Evidence On Numerosity. .......................... 10

III. Conclusion ............................................................................................................... 10

**Table of Authorities**

**Cases**

*Access 4 All, Inc. v. Thirty E 30th St., LLC*,
2006 U.S. Dist. LEXIS 96742 (S.D.N.Y. Dec. 11, 2006) ............................................................ 8

*Buckley v. Valeo*,
424 U.S. 1 (1976) ........................................................................................................................ 7

*CALIF* Class Certification Order, Case No. CV 09-0287 CBM (RZx) ......................................... 9

*Californians for Disability Rights, Inc. (CDR) v. California Dep't of Transp.*,
249 F.R.D. 334 (N.D. Cal. 2008) .............................................................................................. 10

*Caudle v. Towers, Perrin, Forster & Crosby*,
580 F. Supp. 2d 273 (S.D.N.Y. 2008) ........................................................................................ 4

*Chang v. United States*,
327 F.3d 911 (9th Cir. 2003) ...................................................................................................... 4

*Chapman v. Pier 1 Imps. (U.S.), Inc.*,
631 F.3d 939 (9th Cir. 2011) ...................................................................................................... 9

*Crowder v. Kitagawa*,
81 F.3d 1380 (9th Cir. 1996) ...................................................................................................... 2

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006) ................................................................................................... 3, 4

*Disabilty Advocates, Inc. v. N.Y. Coal. for Quality Assisted Living ("DAI")*,
675 F.3d 149 (2d. Cir. 2010) ................................................................................................. 7, 8

*Disabled in Action of Metro. N.Y. v. Trump Int'l Hotel & Tower*,
2003 U.S. Dist. LEXIS 5145 (S.D.N.Y. Apr. 1, 2003) .............................................................. 9

*East Tex. Motor Freight Sys., Inc. v. Rodriguez*,
431 U.S. 395 (1977) .................................................................................................................... 9

*Hargrave v. Vermont*,
340 F.3d 27 (2d Cir. 2003) ......................................................................................................... 4

*Henrietta D. v. Bloomberg*,
331 F.3d 261 (2d Cir. 2003) ....................................................................................................... 2

*Hunt v. Wash. State Apple Adver. Comm'n*,
432 U.S. 333 (1977) .................................................................................................................... 6

*In re Holocaust Victim Assets Litig.*,
225 F.3d 191 (2d Cir. 2000) ....................................................................................................... 6

*J.G. v. Mills*,
2010 U.S. Dist. LEXIS 139956 (E.D.N.Y. 2010) ...................................................................... 4

*Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.*, 767 F. Supp. 1220 (S.D.N.Y. 1991)
*rev'd on other grounds by* 967 F.2d 742 (2d Cir. 1992) .................................................................. 1

*Lovely H. v. Eggleston*,
235 F.R.D. 248 (S.D.N.Y. 2006) ................................................................................................... 9

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ....................................................................................................................... 3

*N.Y. State Org. for Women v. Terry*,
886 F.2d 1339 (2d Cir. 1989) ....................................................................................................... 7

*NAACP v. Alabama*,
357 U.S. 449 (1958) ....................................................................................................................... 7

*Nnebe v. Daus*,
644 F.3d 147 (2d Cir. 2011) ......................................................................................................... 5

*Ragin v. Harry Macklowe Real Estate Co.*,
 6 F.3d 898 (2d Cir. 1993) ............................................................................................................. 5

*Raymond v. Rowland*,
220 F.R.D. 173 (D. Conn. 2004) .................................................................................................. 9

*Rodde v. Bonta*,
357 F.3d 988 (9th Cir. 2004) ........................................................................................................ 9

*Wyoming v. U.S. Dep't of Agric.*,
239 F. Supp. 2d 1219 (D. Wyo. 2002) ......................................................................................... 7

**Statutes**

42 U.S.C. § 12132 ........................................................................................................................... 2

## I. Introduction

The Court should grant Plaintiffs' motion for class certification because Defendants' opposition fails to rebut any of Plaintiffs' arguments. Indeed, Defendants have not meaningfully disputed that Plaintiffs have presented evidence of (1) alleged failings in the City's plans that raise common issues for the class, (2) the significant numbers of people affected by these failures, and (3) the proposed class representatives' and class counsels' ability and determination to represent the class. For this reason alone, the Court should grant Plaintiffs' motion.

Instead of addressing the allegations in Plaintiffs' motion, Defendants' opposition fundamentally mischaracterizes the nature of this action and the harm inflicted on class members as a result of the City's failures in emergency planning for persons with disabilities. Defendants' entire opposition is based on the faulty premise that Plaintiffs' claims rest solely on isolated and discrete incidents during Hurricane Irene or as yet unrealized future events (although both situations certainly do inform the nature of the threat that class members live under on a daily basis). The harm to men, women, and children with disabilities in the City of New York is not in any way so limited, or remote.

Indeed, this case challenges Defendants' current systemic failure to engage in meangingful and system-wide emergency planning for people with disabilities. This failure is happening now. As proposed class member Ronnie Ellen Raymond testified:

> I have no idea what I would do. I have no idea how I would behave or get out, where I would go. I have absolutely no idea, and it's terrifying and it's real. . . . I don't think anybody has ever suggested what one should do, and the more I think about it, the -- the bigger it becomes. How do you get out of the City, what if -- with what if there was a chemical attack, what if there was a bomb or something? I don't know. I don't know.[1]

---

[1] Despite the fact that the Court denied Defendants' request to file a motion for summary judgment on standing, Defendants' opposition is, in effect, an attempt to have the Court rule on the standing issue. Thus, Plaintiffs have included in this reply limited additional evidence and case law to address Defendants' arguments raised in the opposition brief. *See Litton Indus., Inc.*

1

>     --Ronnie Ellen Raymond, Proposed Class Member with Multiple
>     Sclerosis, Deposition at 67:14-68:4.

Plaintiffs do not need to wait for catastrophic injury or death to bring a legal challenge. Indeed, for Ms. Raymond, and the hundreds of thousands like her, that would be too late. Injunctive relief issued by this Court can and will address this critcally important issue on a class-wide basis by effecting revisions in the City's plans designed to address the needs of people with disabilities, thus making this case appropriate for certification under Rule 23(b)(2).

## II. Argument

### A. Plaintiffs Have Standing Based Both On Current And Future Harm.

#### 1. Plaintiffs Have Standing Based On The Current Denial Of Meaningful Access To The Emergency Planning Program.

Plaintiffs have a right under federal disability nondiscrimination statutes to meaningful access to government programs, activities, and services, and to receive the same benefit as other citizens. *See* 42 U.S.C. § 12132; *Henrietta D. v. Bloomberg,* 331 F.3d 261, 273 (2d Cir. 2003); *Crowder v. Kitagawa*, 81 F.3d 1380, 1484-85 (9th Cir. 1996).

As set forth in Plaintiffs' motion, Plaintiffs are suffering current harms in the denial of benefits from the City's emergency planning "program," which, here, consists of the plans and policies the City has established for dealing with emergencies. The City itself states that its Office of Emergency Management ("OEM") "plans and prepares for emergencies, educates the public about preparedness, coordinates emergency response and recovery, and collects and disseminates emergency information." OEM website at ¶ 1, Parks Decl., Exh. G. It is that "planning and preparation," that currently exists, and that Plaintiffs now challenge. The denial of meaningful access results in current harm as people with disabilities are denied the benefit of

---

*v. Lehman Bros. Kuhn Loeb, Inc.*, 767 F. Supp. 1220, 1235 (S.D.N.Y. 1991), *rev'd on other grounds*, 967 F.2d 742 (2d Cir. 1992) (party allowed to address unforeseen issues in reply).

planning on a daily basis.

Defendants have made no effort to dispute the glaring holes in the City's emergency planning, including that:

- The City relies heavily on inaccessible public transportation in the event of evacuation, without planning to address that issue for people with disabilities. *See* Plaintiffs' Motion at 5-6.

- The City has no plan for evacuation from high rise buildings for people with disabilities. *See* Plaintiffs' Motion at 6-7.

- The City fails to provide critical disability related supplies – such as special meals, medications, and durable medical equipment – at general shelters. *See* Plaintiffs' Motion at 7.

- The City tells people with disabilities that they will not be provided with critical disability related supplies at shelters. *See* Plaintiffs' Motion at 7-8.

- The City does not know which of its shelters are physically accessible, and cannot tell the public which are accessible. *See* Plaintiffs' Motion at 8.

- The City assumes that New Yorkers will need to survive for three days without assistance after a major emergency, and has no plans for prioritization of services for people with disabilities during that period. *See* Plaintiffs' Motion at 9.

These failures create more than "generalized anxiety" about this issue, as Defendants' contend. Rather, people with disabilities are afraid for their health, safety, and very lives. Thus, Plaintiffs have already suffered concrete, particularized injuries that are actual, ongoing, and imminent; thus there is no danger that the asserted injury is too "imaginary" or "speculative" to support jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

The Second Circuit is clear that "[a]n injury-in-fact may simply be the fear or anxiety of future harm." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006) (the risk of being audited and assessed penalties sufficient for standing); *see also id.* at 265 (aesthetic, emotional, or psychological harms suffice for standing purposes). As expressed by proposed class member Jean Ryan: "[I]it shows really poor planning, poor information deliverance, you know. . . . I just

3

can't tell you how insecure and unsafe it makes you feel. You just feel like – if there's an emergency, forget about it, we would be dead, or we would be sick, or something." Ryan Depo. at 120:1-11. Similarly, Mary Conner stated "I am very afraid about my ability to get to a shelter and find my way around a shelter during an emergency." Conner Decl. at ¶ 7 (in the past has been given paper instructions she could not read). These statements are representative of the fear that people with disabilities live under, a fear that more than suffices for standing purposes.

### 2. Plaintiffs Need Not Wait For Catastrophic Injury Or Death Before Bringing Suit.

The current denial of meaningful access for persons with disabilities also has the potential for catastrophic future consequences. Plaintiffs are not required to wait for those consequences before bringing suit to stop the violations. The "court does not require Damocles's sword to fall before [it will] recognize the realistic danger of sustaining a direct injury." *Chang v. United States*, 327 F.3d 911, 921 (9th Cir. 2003) (internal quotation marks omitted).

Defendants' attempt to distinguish this matter from the risk in *Hargrave* by asserting that there is no conflict between Plaintiffs and the City, again, ignores the fundamental basis of this lawsuit.[2] Indeed, while in *Hargrave* it was the "impending threat of enforcement," here it is the impending implementation of seriously flawed and dangerous plans. *See Hargrave v. Vermont*, 340 F.3d 27 (2d Cir. 2003). The only difference here is that, because of the nature of emergencies, Plaintiffs do not know *when* those plans may be implemented.

Finally, the hardship to the Plaintiffs of withholding court review of their claims is stark. Beyond subjecting Plaintiffs to ongoing injuries to their legal interests based on Defendants'

---

[2] Defendants' arguments also ignore a wealth of other cases in the Second Circuit that similarly hold that threat itself is sufficient for standing. *See, e.g., Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006) (risk of being audited and assessed penalties by the IRS); *Caudle v. Towers, Perrin, Forster & Crosby*, 580 F. Supp. 2d 273, 279-80 (S.D.N.Y. 2008) (risk of future theft identity and fraud was enough to establish standing); *J.G. v. Mills*, 2010 U.S. Dist. LEXIS 139956 (E.D.N.Y. 2010) (risk of "delayed re-enrollment or denial of an appropriate placement" for students sufficient to confer standing).

continuing statutory violations, a decision not to exercise jurisdiction over this case would place Plaintiffs at increased risk of suffering catastrophic injury or death if a major disaster strikes New York before the deficiencies in the City's emergency plans can be addressed. The purpose of this litigation is to remedy the existing access barriers contained in Defendants' emergency preparedness programs and services *before* those barriers result in tragic consequences.

### B. Plaintiffs BCID And CIDNY Have Standing To Sue Based On Their Own Efforts In The Field, And The Potential Harm To Their Constituents.

#### 1. BCID And CIDNY Have Direct Standing.

In order to argue that CIDNY and BCID lack direct standing to bring this lawsuit, Defendants' opposition ignores Second Circuit case law that is squarely on point. The Second Circuit has a very broad approach to direct organizational standing. *See Nnebe v. Daus*, 644 F.3d 147 (2d Cir. 2011); *see also Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898, 905 (2d Cir. 1993). As the Second Circuit explained:

> We have recognized that only a "perceptible impairment" of an organization's activities is necessary for there to be an "injury in fact." Even if only a few . . . [people] are counseled by [the organization] in a year, there is some perceptible opportunity cost expended by the [organization], because the expenditure of resources that could be spent on other activities "constitutes far more than simply a setback to [the organization's] abstract social interests."

*Nnebe v. Daus*, 644 F.3d 147, 157 (2d Cir. 2011) (internal citations omitted). For example, the court in *Nnebe* held that evidence of spending time counseling was enough to confer standing even if the organization did not identify what other priorities it could not spend time on as a result. *Id.* (stating that while evidence was "scant" it was sufficient for standing). Here, however, there is substantial evidence of the organizational plaintiffs' advocacy and work – both with individual consumers and at a policy level – on emergency preparedness. *See, e.g.,* Wasserman Decl. at ¶ 6; Dooha Decl. at ¶¶ 16-18.

5

Both organizations expend significant resources participating in emergency planning advocacy and do so out of grave concern for their board members', members', and constituents' safety. *See, e.g.,* Wasserman Decl. ¶ 7 (Before Hurricane Irene, BCID issued a press release regarding the lack of information people with disabilities were getting about access to the City's emergency preparations.); Dooha Decl. ¶ 18 (CIDNY has worked with OEM, but "CIDNY representatives . . . have consistently felt that their concerns about disability emergency planning have been ignored."). CIDNY has also spent time during emergencies documenting problems. *See, e.g.,* Dooha Decl. ¶ 27-30 (visited shelters during Irene, documented problems).

Both organizational plaintiffs also have invested substantial time and resources, including counseling individuals with disabilities and attempting to find resources and information for those individuals during times of emergency. *See* Dooha Decl. at ¶ 15; Peters Decl. at ¶ 26; *see also* Wasserman Decl. at ¶ 10 (called OEM before Hurricane Irene to get information on which shelters were accessible, but OEM's disability outreach coordinator was not able to provide that information.); Dooha Decl. at ¶ 22 (following 9/11 CIDNY developed a Disaster Relief Services program when the City did not do so).

### 2. BCID And CIDNY Have Representative Standing.

It is well settled that "an association has standing to bring suit on behalf of its members when (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). An organization that "possess[es] all of the indicia of membership in an organization" may also have representational standing, even if it does not have "members in the traditional sense." *Id.* at 345; *see also In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 196 (2d Cir. 2000); *Disabilty Advocates, Inc. v. N.Y. Coal. for*

6

*Quality Assisted Living ("DAI")*, 675 F.3d 149, 157 (2d. Cir. 2010). To be considered a membership organization, constituents need a degree of control over the representing organization, including such factors as whether constituents (1) have the power to elect directors, (2) make budget decisions, (3) influence the activities of the organization, and (4) were notified that the suit was to be filed. *DAI*, 675 F.3d at 159.

Here, BCID is in fact an actual membership organization. BCID's members are themselves persons with disabilities, and control BCID's organizational agenda. *See* Wasserman Depo. at 67:17-18; Peters Decl. at ¶ 12; *see also id*. at ¶ 10. Defendants do not dispute this fact.[3]

With respect to CIDNY, Defendants citations to Ms. Dooha's deposition (Kruk Decl, Ex. H) are misleading and inaccurate. CIDNY's board of directors are nominated by among other people, board members and "members of the community." *See* Dooha Depo. at 134:22-23, Kruk Decl., Exh. H. Notably, "[o]ver half of CIDNY's board members and over seventy percent of CIDNY's staff are persons with disabilities." Dooha Decl. at ¶ 7. As defendants note: the "board of directors is the entity that determines CIDNY's activities." Kruk Decl., Ex. H at 135:17-18. Moreover, it is clear that the needs of the disability community in fact set CIDNY's agenda. Dooha Decl. at ¶ 8 ("CIDNY's purpose as an organization is to respond to these requests [from

---

[3] Defendants' only apparent argument with respect to BCID's standing is that BCID will not produce the names of its consumers and members. However, courts have not compelled disclosure of such information where it will adversely affect the organization's ability to advocate or cause members to withdraw or expose them to threats, reprisal, and harassment. *See, e.g.*, *NAACP v. Alabama*, 357 U.S. 449, 459-60 (1958); *Buckley v. Valeo*, 424 U.S. 1, 74 (1976); *N.Y. State Org. for Women v. Terry*, 886 F.2d 1339, 1354-55 (2d Cir. 1989); *Wyoming v. U.S. Dep't of Agric.*, 239 F. Supp. 2d 1219, 1237 (D. Wyo. 2002). Here, disclosure of the identity of members and consumers will adversely affect the organization's ability to advocate, in that members and consumers will be reluctant to work with these organizations, and in particular seek assistance in an emergency, if such a request for help makes an individual subject to having their name, and other identifying information, produced to the City. Moreover, disclosure of these names will not further Defendants' cause in that all members of BCID are subject to the faulty planning in this matter.

7

persons with disabilities] and serve this community of New Yorkers with disabilities.").[4]

In contrast, DAI did "not claim that its constituents have a sufficiently active affiliation with the organization" so as to warrant associational standing, but relied on its contractual relationship with the Protection and Advocacy, the main community organization.[5] *DAI,* 675 F.3d at 153. The Court's analysis was of whether standing could be conferred *by virtue of a contract with the P&A. Id.* at 158 ("DAI is not a P&A *system* but a *contractor* to the system.")(emphasis in the original). Here, Plaintiffs *are* the service providers managed and directed by persons with disabilities for the purpose of serving persons with disabilities.

### C. Plaintiffs May Represent A Cross-Disability Class Because This Case Challenges Plans Of General Applicability.

Defendants' argument that Plaintiffs only represent a class on discrete issues directly tied to their disabilities is without merit. Plaintiffs may appropriately represent a cross-disability class in this case because Plaintiffs allege that the City has failed to adequately plan for the needs of all persons with disabilities in emergencies.

The cases that Defendants cite are easily distinguishable, because each of those cases were brought by plaintiffs with mobility disabilities to address specific physical elements that present barriers only to a particular disability, at places of public accommodations, such as hotels and stores. *Disabled in Action of Metro. N.Y. v. Trump Int'l Hotel & Tower*, 2003 U.S. Dist. LEXIS 5145 (S.D.N.Y. Apr. 1, 2003); *Access 4 All, Inc. v. Thirty E 30th St., LLC*, 2006 U.S. Dist.

---

[4] Defendants' assertion that constituents did not approve of this litigation is clearly incorrect, and not supported by the cited deposition excerpt. *See* Kruk Decl., Ex. H (Dooha Depo at 135:20-36:4). In fact, CIDNY's constituents on CIDNY's board of directors actively voted to approve of this litigation. Dooha Depo. at 137:21-24 (Q. You mentioned specifically some board meeting minutes wherein the board had voted to approve the litigation? A. Yes.).

[5] While CIDNY has some contracts with New York State, it is not simply a state contractor. The CIDNY/ NY State contracts primarily exist so that CIDNY can enjoy state independent living center funding. *See* Dooha Depo. 130:7-12. The services CIDNY provides to its constituents are not soley pursuant to a state contract; CIDNY's direct services are provided as part of CIDNY fulfilling its mission to serve and advocate for persons with disabilities.

LEXIS 96742 (S.D.N.Y. Dec. 11, 2006); *Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939 (9th Cir. 2011).[6]

Here, in contrast, Plaintiffs challenge the overarching issue that New York City has failed to adequately plan for the needs of people with all types of disabilities in emergencies. These plans are of general applicability, and starkly different from issues arising from specific physical access barriers that only affect particular disabilities.

Many courts have certified cross-disability classes in class action cases where plaintiffs challenged policies and practices that have general applicability to people with disabilities. Indeed, in a similar action in in the Central District of California concerning the same emergency preparedness issues in Los Angeles, the court certified a class of "*[a]ll people with disabilities*, as defined by the Americans With Disabilities Act, who are within the City of Los Angeles and the jurisdiction served by the City of Los Angeles' and County of Los Angeles' emergency preparedness programs and services." *See CALIF* Class Certification Order, Case No. CV 09-0287 CBM (RZx), Parks Decl., Exh. B (emphasis added); *see also Lovely H. v. Eggleston*, 235 F.R.D. 248, 254 (S.D.N.Y. 2006) (cross-disability class of benefits recipients in New York City); *see also Rodde v. Bonta*, 357 F.3d 988 (9th Cir. 2004) (cross-disability class challenging hospital closure); *Raymond v. Rowland*, 220 F.R.D. 173 (D. Conn. 2004) (cross-disability class challenging failure to provide accommodations and services in benefits).

Even should the Court decide that the class definition need be tailored to the Plaintiffs' disabilities, it is clear that a cross-disability class may still be certified, in that the named Plaintiffs represent a broad disability spectrum. The individual plaintiffs between them have

---

[6] *East Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395 (1977), was an employment case in which putative class members were found not to have standing because they lacked the basic qualifications necessary for the promotion they sought. Here, there are no qualifications to benefit from the City's planning, other than to live in, work in, or visit the City.

mobility, speech, hearing, vision, and mental health disabilities, as well as chronic illnesses. Ms. Morales has a mobility disability, which requires her to use a motorized wheelchair, and prevents her from quickly moving her body, a speech disability, and a hearing impairment. *See, e.g.,* Morales Decl. at ¶ 2. Mr. Bell is blind, has Type II Diabetes, and Post Traumatic Stress Disorder as a result of his service in the armed forces. *See, e.g.,* Bell Decl. at ¶¶ 2, 12, 13. BCID and CIDNY are centers for independent living that represent the needs of people with all types of disabilities. *See, e.g.* Decl. Joan Peters, ¶ 7; Decl. Susan Dooha at p. 2, ¶ 6.

### D. Plaintiffs Have Presented Sufficient Evidence On Numerosity.

Plaintiffs have presented statistical and other data to show that the proposed class numbers in the hundreds of thousands. *See* Blanck Decl. ¶ 15; Dooha Decl. ¶ 7 (CIDNY alone serves 14,000 consumers annually). Defendants' cited cases are inapposite. Indeed, *Californians for Disability Rights, Inc. (CDR) v. California Dep't of Transp.,* relied upon by Defendants (and in which Disability Rights Advocates was class counsel), specifically held that courts regularly rely on statistical data and common sense assumptions to support a finding that joinder would be impracticable. *CDR,* 249 F.R.D. 334, 346 (N.D. Cal. 2008). The 20-40 number referenced by the Court was in reference to *total* class members. *See id.* at 347 ("extrapolating from the statistical data presented by plaintiffs, common sense dictates that there are thousands-if not hundreds of thousands-more" class members than the declarants submitted to the court).

## III. Conclusion

For the reasons stated above, Plaintiffs respectfully request that the Court grant Plaintiffs' motion.

Dated: September 24, 2012                By:_____/s/_____
                                                Shawna L. Parks
                                                Attorneys for Plaintiffs

10

DISABILITY RIGHTS ADVOCATES
JULIA PINOVER (JMP333)
Disability Rights Advocates
40 Worth Street, 10th Floor
New York, NY 10013
Telephone: (212) 644-8644
Facsimile: (212) 644-8636
Email: general@dralegal.org


SID WOLINSKY (CA Bar No. 33716)*
SHAWNA L. PARKS (CA Bar No. 208301)*
REBECCA S. WILLIFORD (CA Bar No. 269977)*
Disability Rights Advocates
2001 Center Street, Fourth Floor
Berkeley, CA 94704
Telephone: (510) 665-8644
Facsimile: (510) 665-8511
TTY: (510) 665-8716
Email: general@dralegal.org

*Admitted *pro hac vice*

SHEPPARD MULLIN RICHTER & HAMPTON LLP
Daniel L. Brown
Paul Garrity
30 Rockefeller Plaza
New York, NY 10112
Telephone: 212-653-8700
Facsimile: 212-653-8701

Attorneys for Plaintiffs

11