```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/7/12
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
BROOKLYN CENTER FOR INDEPENDENCE OF           :
THE DISABLED, a nonprofit organization, CENTER :
FOR INDEPENDENCE OF THE DISABLED, NEW         :
YORK, a nonprofit organization, GREGORY D. BELL, :     11 Civ. 6690 (JMF)
and TANIA MORALES,                            :
                                              :       OPINION AND ORDER
                Plaintiffs,                   :
                                              :
        -v-                                   :
                                              :
MICHAEL R. BLOOMBERG, in his official capacity as :
Mayor of the City of New York, and THE CITY OF :
NEW YORK,                                     :
                                              :
                Defendants.                   :
                                              :
------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      This case — filed shortly after Hurricane Irene in 2011 — raises the question of whether the City of New York's emergency preparedness plans adequately address the needs of people with disabilities. Brooklyn Center for Independence of the Disabled ("BCID") and the Center for the Independence of the Disabled, New York ("CIDNY"), two non-profit organizations, along with Gregory D. Bell and Tania Morales, two individual plaintiffs, bring suit against the City of New York (the "City") and Mayor Michael R. Bloomberg under Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 United States Code, Section 794, *et seq.*; Title II of the Americans with Disabilities Act ("ADA"), 42 United States Code, Section 12131; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Administrative Code, Section 8-101, *et. seq.*, alleging a systematic failure to address the needs of persons with disabilities in the City's emergency and disaster planning. (Amended Compl. ¶¶ 1, 14).

Trial in this matter is scheduled for December 10, 2012. The question now pending before the Court is not whether the plaintiffs' allegations have merit, but whether the case should proceed as a class action. On August 31, 2012, the plaintiffs moved to certify the following class under Federal Rules of Civil Procedure 23(a) and (b)(2): "all persons with disabilities in the City of New York who have been and are being denied the benefits and advantages of New York City's emergency preparedness program because of Mayor Bloomberg and New York City's continuing failure to address the unique need of this population in the City's emergency planning and preparations." (Mot. to Certify Class (Docket No. 35)). Defendants oppose the motion, principally on the ground that plaintiffs lack standing to bring their claims because they have not proved an "injury in fact." (Defs.' Mem. in Opp'n to Pls.' Mot. to Certify Class ("Defs.' Opp'n Mem.") at 2 (Docket No. 59)). The motion was fully submitted on September 24, 2012.

For the reasons discussed below, plaintiffs' motion to certify the class is GRANTED as modified and subject to comment from the parties.[1]

## BACKGROUND

The City's Office of Emergency Management ("OEM") is responsible for planning and preparing for emergencies, educating the public about preparedness for emergencies, coordinating emergency responses and recovery efforts, and collecting and disseminating emergency information to the public. (Parks Decl. Ex. G at 1 (Docket No. 51)). Part of OEM's mandate is to develop written, city-wide plans to address emergencies that might befall the City.

---

[1] On August 31, 2012, plaintiffs filed a motion to seal their unredacted memorandum of points and authorities in support of their motion for class certification. (Docket No. 52). As a basis for their motion, plaintiffs cite the fact that defendants designated a number of documents discussed in the memorandum as confidential. Inexplicably, defendants did not respond to the motion. Nevertheless, and although it is not clear to the Court why some of this material should be kept confidential, this Opinion and Order has been redacted in keeping with plaintiffs' motion pending comment by the parties as discussed below.

(*See id.* Ex. H). These plans cover emergencies ranging from natural disasters (for example, hurricanes, floods, and winter weather) to other miscellaneous hazards (for example, downed trees, power interruptions, and oil spills). (*Id.*).

Plaintiffs in this action allege that the City's emergency plans are either inadequate with respect to the needs of people with disabilities or that they fail to provide for their needs entirely. (*See* Mem. in Support of Mot. to Certify Class ("Pls.' Mem.") at 3). In particular, the plaintiffs identify four alleged problems with the City's emergency plans. █████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████

    █████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████

    █████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

Plaintiffs seek a declaration from this Court that the above failures (and others) violate the ADA, the Rehabilitation Act, and the NYCHRL. (Amended Compl. ¶ 155). In addition, they seek an injunction requiring the City to develop and implement an emergency preparedness program that addresses the unique needs of people with disabilities. (*Id.* ¶ 156). For the moment, however, the sole issue before the Court is plaintiffs' motion to certify a plaintiff class of "all persons with disabilities in the City of New York who have been and are being denied the benefits and advantages of New York City's emergency preparedness program because of Mayor Bloomberg and New York City's continuing failure to address the unique need of this population in the City's emergency planning and preparations." (Mot. to Certify Class).

## DISCUSSION

**A.    Standing**

In opposing class certification, defendants argue principally that both the individual plaintiffs and the organizational plaintiffs lack standing. Standing "is a threshold question — antecedent to class certification — that requires plaintiffs to have been personally injured . . . ." *Pub. Emps. Ret. Sys. v. Merrill Lynch & Co.*, 714 F. Supp. 2d 475, 480-81 (S.D.N.Y. 2010). More specifically, to have standing,

> [1] the plaintiff[s] must have suffered an injury in fact that is both concrete and particularized and actual or imminent, not conjectural or hypothetical; [2] there must be a causal connection between the injury and the conduct complained of

4

> such that the injury is fairly traceable to the challenged action of the defendant[s]; and [3] it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 211 (2d Cir. 2012) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks omitted)).

In the present case, defendants contend that the plaintiffs have not suffered an "injury in fact" sufficient to confer standing. (*See* Defs.' Opp'n Mem. at 2). Significantly, although it is plaintiffs' burden to establish such injury, *see Roxbury Taxpayers Alliance v. Delaware Cnty. Bd. of Supervisors*, 80 F.3d 42, 47 (2d Cir. 1996), "plaintiffs are not required to *prove* injury-in-fact at the class certification stage," *In re Amaranth Natural Gas Commodities Litig.*, 269 F.R.D. 366, 379 (S.D.N.Y. 2010). Instead, at this stage in the litigation, plaintiffs need only properly allege such an injury. *See, e.g.*, *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006) (explaining that, for purposes of determining standing, the court "'must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party' (i.e., the class members)" (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975))).

### 1. The Individual Plaintiffs Have Standing

Applying these standards here, Bell and Morales — the individual plaintiffs — have standing to pursue claims against the defendants, at least to the extent those claims relate to their individual disabilities. It may be true, as defendants contend, that neither plaintiff suffered a concrete injury during Hurricane Irene that could be fairly traced to the City's emergency planning or procedures. (*See* Defs.' Opp'n Mem. at 10-12). But that contention misses the point of plaintiffs' claims. The gravamen of plaintiffs' claims is, first and foremost, that they have been, and continue to be, deprived of benefits afforded to other citizens — namely, the benefits

5

of an adequate emergency preparedness program.  (*See* Pls.' Reply Mem. at 2; Amended Compl. ¶¶ 1-13).  Plaintiffs' allegations may or may not be true — that will be determined at trial — but they are sufficient at this stage to establish plaintiffs' standing.  *Cf. Henrietta D. v. Bloomberg*, 331 F.3d 261, 274 (2d Cir. 2003) (stating that, under the ADA, public entities are "prohibited from affording to persons with disabilities services that are 'not equal to that afforded others,' or 'not as effective in affording equal opportunity'" and that, under the Rehabilitation Act, reasonable accommodation must be made "to the known physical or mental limitations of an otherwise qualified handicapped applicant or employee" (quoting 28 C.F.R. §§ 35.130(b)(1), 41.53 (2002))).

   In addition, Bell and Morales have standing based on the threat of future harm and the fear and apprehension caused by it.  (*See* Amended Compl. ¶¶ 55, 58; *see also* Pls.' Reply Mem. at 3).  To be sure, the threat of future harm gives rise to standing only where the likelihood of such harm is "sufficiently real and immediate to show an existing controversy."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)); *see also, e.g.*, *Baur v. Veneman*, 352 F.3d 625, 636 (2d Cir. 2003) (holding that fear or anxiety must be based on more than "mere conjecture" to confer standing).  But "one does not have to await the consummation of threatened injury to obtain preventive relief.  If the injury is certainly impending, that is enough."  *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (quoting *Pennsylvania v. West Virginia*, 262 U.S. 553, 593 (1923)).  Moreover, "[t]he difference between a threatened injury and a conjectural one is a matter of degree, and since no precise test exists, each case must be considered on an individual basis."  *Alliance of Am. Insurers v. Cuomo*, 854 F.2d 591, 596 (2d Cir. 1988).  Notably, where the threatened injury is particularly severe, courts are more likely to find standing.  *See, e.g.*, *Baur v. Veneman*, 352

F.3d 625, 637 (2d Cir. 2003) ("Because the evaluation of risk is qualitative, the probability of harm which a plaintiff must demonstrate in order to allege a cognizable injury-in-fact logically varies with the severity of the probable harm."). Similarly, courts are more inclined to find standing if "there is no better time" to resolve the issues raised by the parties — that is, when they "will be in no better position later than . . . now." *Alliance of Am. Insurers*, 854 F.2d at 599 (quoting *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 145 (1974)).

Weighing these considerations here, the alleged injuries in this case are more substantial than in many cases where plaintiffs have been found to have standing. *See, e.g.*, *Denney*, 443 F.3d at 264-65 (holding that class members who had conducted transactions based upon allegedly improper and fraudulent tax counseling had standing even though many were likely "insulated from exposure" to penalties by the statute of limitations); *Baur*, 352 F.3d at 628 (holding that "exposure to an enhanced risk of disease transmission may qualify as injury-in-fact"); *Caudle v. Towers, Perrin, Forster & Crosby*, 580 F. Supp. 2d 273, 279-80 (S.D.N.Y. 2008) (holding that the risk of future identity theft and fraud arising from the theft of a laptop containing personal information was sufficient to confer standing). It is, of course, not possible to know with certainty if or when disaster will strike the City, but — as the tragic events of the past few weeks make abundantly clear — it is beyond "mere conjecture" that another disaster, whether natural or manmade, will occur and that it will seriously affect members of the proposed class. *Baur*, 352 F.3d at 636; *cf. Hargrave v. Vermont*, 340 F.3d 27, 34 (2d Cir. 2003) (finding that the threat of a statute's enforcement was sufficient to confer standing). Additionally, at the extreme, plaintiffs are threatened with an increased risk of death or serious injury. Finally, a court would be in no better position later than now to resolve the claims presented. Indeed, to conclude otherwise would be perverse, as it would mean that plaintiffs could bring their claims

only after their worst fears had been realized.  *See, e.g.*, *Chang v. United States*, 327 F.3d 911, 921 (9th Cir. 2003) (noting that the "court does not require Damocles's sword to fall before . . . recogniz[ing] the realistic danger of sustaining a direct injury" (internal quotation marks omitted)).  Accordingly, the individual plaintiffs have standing in the instant action.

### 2.     The Organizational Plaintiffs Also Have Standing

In any event, BCID and CIDNY also have standing to pursue the claims in this case.  There are two ways for an organization to establish standing.  First, an organization may have standing solely as a representative of its members.  *See, e.g.*, *Disability Advocates, Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.*, 675 F.3d 149, 156-57 (2d Cir. 2012) ("*DIA*"); *Bano v. Union Carbide Corp.*, 361 F.3d 696, 713 (2d Cir. 2004).  An association has standing to bring suit on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *DIA*, 675 F.3d at 157 (quoting *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)).  The first two of these requirements are constitutional in nature; the third is "prudential" and "best seen as focusing on . . . matters of administrative convenience and efficiency."  *Alliance for Open Soc'y Int'l, Inc. v. USAID*, 651 F.3d 218, 229 (2d Cir. 2011) (quoting *United Food & Commercial Workers Union Local 751 v. Brown Grp.*, 517 U.S. 544, 555-56 (1996)).

Alternatively, an organization may establish standing to sue on its own behalf so long as it can independently satisfy the requirements of Article III standing — namely, injury-in-fact, a causal connection, and redressability.  *See, e.g.*, *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011).  Significantly, in *Nnebe*, the Second Circuit made clear that "scant" evidence of "only a

perceptible impairment of an organization's activities is necessary for there to be an injury in fact." *Id.* at 157 (internal quotation marks omitted).  In that case, the court held that the New York Taxi Workers Alliance ("NYTWA") had standing to challenge the City's policy of automatically suspending the licenses of taxi drivers who were arrested on criminal charges given evidence that the organization "expended resources to assist its members who face summary suspension by providing initial counseling, explaining the suspension rules to drivers, and assisting the drivers in obtaining attorneys." *Id.* at 157.  "Even if only a few suspended drivers are counseled by NYTWA in a year," the court reasoned, "there is some perceptible opportunity cost expended by the [NYTWA], because the expenditure of resources that could be spent on other activities 'constitutes far more than simply a setback to [NYTWA's] abstract social interests.'"  *Id.* (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)).

The organizational plaintiffs in this case have both associational and direct standing.  First, BCID plainly satisfies the test for associational standing.  As alleged in the complaint, it is a membership organization; its members include people with disabilities, who have standing in their own right for the reasons explained above; the interests it seeks to protect are germane to its purpose, which is to "provid[e] services and advocacy toward independent living for individuals with disabilities"; and neither the claims asserted nor the relief requested require the participation of individual members, as the complaint seeks city-wide injunctive relief rather than damages.  (Amended Compl. ¶¶ 17-34).  Aside from disputing that BCID's members have standing to sue in their own right, defendants' sole argument in the face of these allegations is that BCID has "refuse[d]" to identify any of its members by name.  (Defs.' Opp'n Mem. at 16).  Defendants have pointed to no cases suggesting that there is such a requirement for purposes of establishing standing, however.  At this stage, it is enough that BCID alleges that it is a membership

9

organization and that its members include people with disabilities.  *See In re Amaranth Natural Gas Commodities Litig.*, 269 F.R.D. at 379.

CIDNY's case for associational standing is weaker only because it is apparently not a membership organization.  Nevertheless, it is well established "that — assuming the other criteria for associational standing are met — non-membership organizations may sue in a representative capacity when they function effectively as a membership organization."  *DIA*, 675 F.3d at 157 (quoting *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 196 (2d Cir. 2000) (internal quotation marks and brackets omitted).  That is the case here, as CIDNY's purpose "is to respond to . . . requests [from people with disabilities] and serve th[e] community of New Yorkers with disabilities."  (Dooha Decl. ¶ 8).  Moreover, among other things, over half of CIDNY's board members and over seventy percent of CIDNY's staff are allegedly persons with disabilities.  (Amended Compl. ¶ 35).  In short, CIDNY is a "service provider[] managed and directed by persons with disabilities for the purpose of serving persons with disabilities."  (Pls.' Reply Mem. at 8).  As such, it has sufficient "indicia of membership" to "function effectively as a membership organization" for the purposes of associational standing.  *DIA*, 675 F.3d at 157 (quoting *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 196 (2d Cir. 2000)); *see also id.* at 158-59 (looking for the "indicia of membership," such as whether the people purportedly represented by the relevant organization "have the power to elect its directors, make budget decisions, or influence [its] activities or litigation strategies").

In any event, even if BCID and CIDNY did not have standing to bring this suit on behalf of their (real or functional) members, they have standing to sue on their own behalf.  As alleged in both the amended complaint and documents submitted in support of the present motion, both organizations have expended considerable resources counseling constituents, gathering and

10

coordinating information, and documenting problems with the City's plans.  (*See* Pls.' Mem. at 6).  For example, before Hurricane Irene, BCID issued a press release and attempted to call its 1,400 members and constituents in evacuation zones to advise them of proper evacuation procedures.  (*See* Wasserman Decl. ¶¶ 7-8).  CIDNY representatives visited shelters during Hurricane Irene to assess accessibility and interviewed volunteers to determine their level of knowledge about issues related to people with disabilities.  (*See* Dooha Decl. ¶¶ 27-30).  Weighed against the "scant" evidence found sufficient to confer standing in *Nnebe*, this evidence is plainly enough for BCID and CIDNY to sue on their own behalf.  644 F.3d at 157 (internal quotation marks omitted).  Notably, in arguing otherwise, defendants not only ignore the Second Circuit's decision in *Nnebe*, but they rely on out-of-circuit precedent expressly rejected in *Nnebe*.  (Defs.' Opp'n Mem. at 17 (citing *Fair Hous. Council v. Montgomery Newspapers*, 141 F.3d 71, 78 (3d Cir. 1998), cited in *Nnebe*, 644 F.3d at 157)).

Defendants also maintain that the organizational plaintiffs lack standing because the outreach and services they provide are "precisely the type of services that they routinely provide as part of their respective organizational missions."  (Defs.' Opp'n Mem. at 17-18).  But as the *Nnebe* court made clear, "so long as the economic effect on an organization is real, the organization does not lose standing simply because the proximate cause of that economic injury is 'the organization's noneconomic interest in encouraging [a particular policy preference].'" 644 F.3d at 157 (quoting *Havens Realty Corp.*, 455 U.S. at 379 n.20).

**B.     Class Certification**

Having found that plaintiffs have standing to pursue their claims, the Court turns to whether the proposed class should be certified.  Plaintiffs seeking class certification must first meet the requirements of Rule 23(a) of the Federal Rules of Civil Procedure — namely:

11

numerosity, commonality, typicality, and adequacy of representation.  *See* FED. R. CIV. P. 23(a). If those threshold requirements are met, the proposed class must also fit within one of the subdivisions of Rule 23(b).  *See* FED. R. CIV. P. 23(b); *see also, e.g.*, *Brown v. Kelly*, 609 F.3d 467, 475-76 (2d Cir. 2010).  In determining whether to certify a class, a district court is required to consider only the allegations set forth in the complaint and to take all of plaintiffs' allegations as true.  *See, e.g.*, *Shelter Realty Corp. v. Allied Maint. Corp.*, 574 F.2d 656, 661 n.15 (2d Cir. 1978).  Plaintiffs bear the burden of showing, by a preponderance of the evidence, that the requirements of Rule 23 are met.  *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 546 F.3d 196, 201-04 (2d Cir. 2008).

The Court will address each of the Rule 23 requirements in turn.

**1.    Numerosity**

The first requirement for class certification — the only requirement defendants really contest (*see* Defs.' Opp'n Mem. at 24-25) — is that "the class is so numerous that joinder of all members is impracticable."  FED. R. CIV. P. 23(a)(1).  The Second Circuit has held that "numerosity is presumed at a level of 40 members."  *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  At the same time, "[c]ourts have not required evidence of exact class size or identity of class members in order to satisfy the numerosity requirement."  *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993).  Moreover, insofar as practicability is the ultimate touchstone of the analysis, courts are instructed to consider all the circumstances surrounding the case, not merely the number of potential class members.  *See id.* at 936. "Relevant considerations include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief

12

which would involve future class members." *Id.*

Here, the proposed class easily satisfies the numerosity requirement. Relying on the 2008 American Community Survey from the United States Census Bureau — "a recognized data set to determine the population of people with disabilities" (Blanck Decl. ¶ 15 & Ex. B at 5) — plaintiffs estimate that there are roughly 900,000 people with disabilities in New York City (Pls.' Mem. at 13), a number clearly rendering joinder impracticable. Moreover, given the injunctive nature of the relief requested, the diverse financial resources of the class members, and the burden on the court system of multiple, individual requests for injunctive relief, certification is plainly appropriate under Rule 23(a)(1). In contending otherwise, defendants largely rehash their arguments about standing (Defs.' Opp'n Mem. at 22-24), rejected above. In addition, defendants assert that plaintiffs have come forward with no more than "pure speculation" about the size of the proposed class. (Defs.' Opp'n Mem. at 24). But that assertion is based on the same fundamental misunderstanding of plaintiffs' claims that drove defendants' arguments about standing. As discussed above, the gravamen of plaintiffs' claims is not that they or other class members were injured during Hurricane Irene or some other disaster, but that they have been deprived of a benefit — namely, appropriate emergency preparedness planning — that the rest of the population has been given. Put simply, the relevant class of people is therefore all people with disabilities in the City. Accordingly, the numerosity requirement is plainly satisfied.

    **2.    Commonality**

The second requirement for class certification is that "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). Members of the class must have claims that "depend upon a common contention," that is "capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each

13

one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). The test for commonality, however, "'is not demanding' and is met so long as there is at least one issue common to the class." *Raymond v. Rowland*, 220 F.R.D. 173, 179 (2004) (Kravitz, J.) (quoting *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999)).

Plaintiffs have met this burden. To be sure, the class members have diverse disabilities and will not all be affected by the alleged omissions in the City's plan the same way.[2] But "[c]ommonality does not mandate that all class members make identical claims and arguments, only that common issues of fact or law affect all class members." *Stinson v. City of N.Y.*, 282 F.R.D. 360, 369 (S.D.N.Y. 2012) (quoting *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198 (S.D.N.Y. 1992)); *see also Port Auth. Police Benevolent Ass'n v. Port Auth.*, 698 F.2d 150, 153-54 (2d Cir. 1983)). In other words, "[a] court may find a common issue of law even though there exists some factual variation among class members' specific grievances." *Stinson*, 282 F.R.D. at 369 (quoting *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 37 (E.D.N.Y. 2008)). Here, at issue is a City-wide policy and its alleged failure to take into account the needs of disabled citizens. This issue is common to the proposed class because it challenges "acts and omission of the [City] that are not specific to any particular Plaintiff." *Raymond*, 220 F.R.D. at 180; *see also Henrietta D. v. Giuliani*, No. 95 Civ. 0641 (SJ), 1996 WL 633382, at *14 (E.D.N.Y. Oct. 25, 1996)). Accordingly, the commonality requirement has been met.

---

[2] According to the Amended Complaint, approximately 180,000 non-institutionalized New York City residents have a hearing disability, approximately 210,000 non-institutionalized New York City residents have a vision disability, and approximately 535,000 non-institutionalized New York City residents have a mobility disability. (Amended Compl. ¶ 110).

14

### 3. Typicality

The third Rule 23(a) requirement is that "the claims or defenses of the representative parties are typical of [those] of the class." FED. R. CIV. P. 23(a)(3). The Supreme Court has observed that "the commonality and typicality requirements of Rule 23(a) tend to merge." *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982). More specifically, typicality "is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Sykes v. Mel Harris & Assocs. LLC*, 09 Civ. 8486 (DC), 2012 U.S. Dist. LEXIS 125336, 17-18 (S.D.N.Y. Sept. 4, 2012) (quoting *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001)). Where, as here, the alleged "injuries derive from a unitary course of conduct by a single system," typicality is generally found. *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997). Based on the above discussion of commonality, and the fact that, together, the named plaintiffs have "mobility, speech, hearing, vision, and mental health disabilities, as well as chronic illnesses" (Pls.' Reply Mem. at 9-10), the representatives satisfy the typicality requirement.

### 4. Adequacy of Representation

Finally, Rule 23(a)(4) requires that the class representatives will "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). In particular, the Court must inquire as to whether "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Here, there is no dispute that these conditions are met. The plaintiffs, both individual and organizational, are advocating for equal treatment for all people with disabilities under the City's emergency plan, and there is no indication of any conflict between them and the members of the class.

Additionally, plaintiffs' counsel are experienced litigators.  Indeed, Disability Rights Advocates has successfully litigated a similar case regarding emergency preparedness in California.  (*See* Parks Decl. ¶ 8).  Accordingly, the adequacy of representation requirement is satisfied.[3]

### 5. Rule 23(b)

The Rule 23(a) requirements having been met, the only remaining question is whether the proposed class falls within one of the categories set forth in Rule 23(b).  That question is easily resolved, as the proposed class plainly satisfies Rule 23(b)(2), which applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that the final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  FED. R. CIV. P. 23(b)(2).  Plaintiffs allege that defendants have failed to act to protect the interests of the class as a whole by ignoring the unique problems faced by people with disabilities in times of emergency.  Instead of seeking damages, they seek only injunctive relief, which would require the City to address the alleged deficiencies and plainly benefit the proposed class as a whole.  Notably, cases like this one, "alleging systemic failure of governmental bodies to properly fulfill statutory requirements, have been held to be appropriate for class certification under Rule 23(b)(2)."  *Raymond*, 220 F.R.D. at 181 (citing *Brown v. Giuliani*, 158 F.R.D. 251,

---

[3] In addition to the requirements set forth in Rule 23(a), the Second Circuit recognizes an implied requirement of "ascertainability."  *In re Initial Pub. Offering ("IPO") Sec. Litig.*, 471 F.3d 24, 45 (2d Cir. 2006).  It is not clear that the ascertainability requirement applies to Rule 23(b)(2) class actions, however, as notice is not obligatory and the relief sought is injunctive rather than compensatory.  *See, e.g.*, *Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co. (In re Vitamin C Antitrust Litig.)*, 279 F.R.D. 90, 116 (E.D.N.Y. 2012) (explaining that "the ascertainability requirement is less important in a Rule 23(b)(2) class, since a chief objective of this rule is to provide broad injunctive relief to 'large and amorphous' classes not capable of certification under Rule 23(b)(3)" (quoting *Marisol A.*, 126 F.3d at 378)).  In any event, if the requirement does apply, class members need not be ascertainable prior to class certification; they need only be ascertainable at some point in the case.  *See In re IPO Sec. Litig.*, 471 F.3d at 45.  Here, there is a clear enough delineation of the class for the Court to determine whether a particular individual is a member in this case.

16

269 (E.D.N.Y. 1994)). Indeed, courts have held that "[c]lass certification under Rule 23(b)(2) is particularly appropriate in civil rights litigation." *Stinson*, 282 F.R.D. at 379 (citing *Loper v. N.Y.C. Police Dep't*, 135 F.R.D. 81, 83 (S.D.N.Y. 1991)). Accordingly, the Court holds that class certification under Rule 23(b)(2) is appropriate in this case.

## C.    The Proposed Class Definition

For the foregoing reasons, certification of a plaintiff class is appropriate in this case. The next question is whether the definition of the class proposed by plaintiffs — namely, "all persons with disabilities in the City of New York who have been and are being denied the benefits and advantages of New York City's emergency preparedness program because of Mayor Bloomberg and New York City's continuing failure to address the unique need of this population in the City's emergency planning and preparations" (Mot. to Certify Class) — is an appropriate one. Under Rule 23, district courts have the power to amend class definitions or decertify classes as necessary. *See, e.g.*, *Morangelli v. Chemed Corp.*, 275 F.R.D. 99, 114 (E.D.N.Y. 2011) (explaining that "[t]he court may, in its discretion . . . modify the definition of the proposed class to provide the necessary precision or to correct other deficiencies") (quoting 5 James Wm. Moore *et al.*, Moore's Federal Practice § 23.21[6]). "In fact, the court has a duty to ensure that the class is properly constituted and has broad discretion to modify the class definition as appropriate to provide the necessary precision." *Id.*

In the Court's view, the plaintiffs' proposed class definition here is potentially problematic insofar as it appears to presume a finding in plaintiffs' favor on the merits. For example, if it turns out that defendants did *not* "fail[] to address the unique need" of the disabled population, an argument could be made — after the fact — that the plaintiff class lacked any members. That, in turn, could effectively undermine the value of defendants' victory. As the

17

Seventh Circuit explained in rejecting a similarly conclusory class definition:

> Using a future decision on the merits to specify the scope of the class makes it impossible to determine who is in the class until the case ends, and it creates the prospect that, if the employer should prevail on the merits, this would deprive the judgment of preclusive effect: any other former worker could file a new suit, given that the losing 'class' lacked any members.

*Bolden v. Walsh Constr. Co.*, 688 F.3d 893, 895 (7th Cir. 2012).

Accordingly, using as a model the class certified in the similar challenge to the emergency preparedness plans of the City of Los Angeles, *see Communities Actively Living Indep. & Free v. City of Los Angeles*, CV 09-0287 (CBM) (RZX), 2011 WL 4595993, at *12 (C.D. Cal. Feb. 10, 2011), the Court intends to certify the following class: "All people with disabilities, as defined by the Americans with Disabilities Act, who are within the City of New York and the jurisdiction served by the City of New York's emergency preparedness programs and services." Before doing so, however, the Court will allow each party an opportunity to comment on the proposed class definition as modified. If no objections are raised, the Court will certify the class as proposed without further notice.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for class certification is hereby GRANTED as modified and subject to comment from the parties. Absent objections, the Court will certify a plaintiff class consisting of the following: "All people with disabilities, as defined by the Americans with Disabilities Act, who are within the City of New York and the jurisdiction served by the City of New York's emergency preparedness programs and services." The parties shall have until **November 13, 2012**, at **12:00 p.m.**, to submit letter objections, not to exceed three pages, regarding the Court's proposed class definition.

It is further ORDERED that defendants have until **November 19, 2012**, to respond to

plaintiffs' motion to seal, showing good cause why maintaining the relevant materials under seal is consistent with the presumption of access created by both the common law and the First Amendment. *See, e.g., Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006). In any such response, defendants shall also address whether there is a basis to maintain the unredacted version of this Opinion and Order under seal. Absent a response, the Court will publicly file the unredacted version of this Opinion and Order and deny plaintiffs' motion to seal without further notice to the parties. In the meantime, the Clerk of Court is directed to maintain the unredacted version of this Opinion and Order under seal.

It is important to note that the fact that plaintiffs have carried their burden at this stage, and class certification is appropriate, is not to say that the plaintiff class is entitled to the relief it ultimately seeks. It may be, as defendants vigorously assert, that the plaintiffs' claims are "patently false" and that the City has "carefully developed sophisticated operational and logistical plans and supporting resources that effectively serve the health and safety needs of all New Yorkers during emergencies, including those with disabilities." (Defs.' Opp'n Mem. at 1-2). The fact that plaintiffs have carried their present burden is only to say that they have satisfied the requirements for proceeding by way of a class action. Whether they ultimately prevail will be determined at the trial scheduled to begin on December 10, 2012.

SO ORDERED.

Dated: November 7, 2012
New York, New York

JESSE M. FURMAN
United States District Judge

19