# EXHIBIT E

# SETTLEMENT AGREEMENT

# BETWEEN

# THE UNITED STATES OF AMERICA

# AND

# CITY OF JACKSONVILLE, FLORIDA

# UNDER THE AMERICANS WITH DISABILITIES ACT

## DJ 204-17M-398

Press Release | Fact Sheet

## BACKGROUND

### *SCOPE OF THE INVESTIGATION*

The United States Department of Justice (Department) initiated this matter as a compliance review of the City of Jacksonville under title II of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12131-12134, and the Department's implementing regulation, 28 C.F.R. Part 35. Because the City of Jacksonville receives financial assistance from the Department of Justice, the review was also conducted under the authority of section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Department's implementing regulation, 28 C.F.R. Part 42, Subpart G.

The review was conducted by the Disability Rights Section of the Department's Civil Rights Division and focused on the City of Jacksonville's compliance with the following title II requirements:

- to conduct a self-evaluation of its services, policies, and practices by July 26, 1992, and make modifications necessary to comply with the Department's title II regulation, 28 C.F.R. §

35.105;

- to notify applicants, participants, beneficiaries, and other interested persons of their rights and the City of Jacksonville's obligations under title II and the Department's regulation, 28 C.F.R. § 35.106;

- to designate a responsible employee to coordinate its efforts to comply with and carry out the City of Jacksonville's ADA responsibilities, 28 C.F.R. § 35.107(a);

- to establish a grievance procedure for resolving complaints of violations of title II, 28 C.F.R. § 35.107(b);

- to operate each program, service, or activity so that, when viewed in its entirety, it is readily accessible to and usable by individuals with disabilities, 28 C.F.R. §§ 35.149, by
    - delivery of services, programs, or activities in alternate ways, including, for example, redesign of equipment, reassignment of services, assignment of aides, home visits, or other methods of compliance or, if these methods are not effective in making the programs accessible,

    - physical changes to buildings (required to have been made by January 26, 1995), in accordance with the Department's title II regulation, 28 C.F.R. §§ 35.150 and 35.151, and the 1991 ADA Standards for Accessible Design (Standards), 28 C.F.R. part 36, App. D (2011), or the Uniform Federal Accessibility Standards (UFAS), 41 C.F.R. § 101-19.6, App. A;

- to ensure that facilities for which construction or alteration was begun after January 26, 1992, are readily accessible to and usable by people with disabilities, in accordance with 1) the Department's title II regulation and 2) the Standards, UFAS, or the 2010 Standards for Accessible Design (2010 Standards), 28 C.F.R. § 35.104 (title II)(defining the 2010 Standards as the requirements set forth in appendices B and D to 36 C.F.R. part 1191 and the requirements contained in subpart D of 28 C.F.R. part 36), as applicable, 28 C.F.R. § 35.151;

- to ensure that communications with applicants, participants, and members of the public with disabilities are as effective as communications with others, including furnishing auxiliary aids and services when necessary, 28 C.F.R. § 35.160;

- to provide direct access via TTY (text telephone) or computer-to-telephone emergency services, including 9-1-1 services, for persons who use TTYs, 28 C.F.R. § 35.162;

- to provide information for interested persons with disabilities concerning the existence and location of the City of Jacksonville's accessible services, activities, and facilities, 28 C.F.R. § 35.163(a); and

- to provide signage at all inaccessible entrances to each of its facilities, directing users to an accessible entrance or to information about accessible facilities, 28 C.F.R. § 35.163(b).

As part of its compliance review, the Department reviewed the following facilities, which – because construction or alterations commenced after January 26, 1992 – must comply with the ADA's new construction or alterations requirements: Baseball Grounds of Jacksonville; Jacksonville Main Library; Dinsmore Community Center; Sisters Creek Boat Ramp; Pablo Creek Library; Oceanway Senior Center; Fire Station #35; Southside Tennis Complex; Jacksonville Children's Commission; City Hall; Robert F. Kennedy Center; Lane/Wiley Senior Center; Metropolitan Park; Simonds-Johnson Rec Center and Park; Highlands Branch Library; Beaches Library; Morgan Park; Edward Ball Building; Maxville Athletics Field; Brentwood Community Center and Health Center; Brentwood Library; San Marco Library; Balis Community Center; Jacksonville Zoo; and Jacksonville Municipal Stadium.

The Department's program access review covered those of the City of Jacksonville's programs, services, and activities that operate in the following facilities: IM Sulzbacher Shelter; Oceanway Park; Oceanway Community Center; Pre-Trial Detention Facility; Forsyth Pocket Park/Jesse B. Smith Park; Florida Theater; Police Memorial Building; Jacksonville Central Health Plaza; Office of the Sheriff/Community Corrections Division; Mary Singleton Community Center; Hanna Park; Times Union Center; Eastside Park/Flossie Brunson Park; Emmett Reed Center; Head Start; Julius Guinyard

Park; Durkee Field-James Small Stadium; Clanzel T. Brown Community Center; Clanzel T. Brown Pool; Clanzel T. Brown Sports Complex; Supervisor of Elections; Claude Yates City Hall Annex; Bethesda Park; Yates Parking Garage; Wallace Small Senior Center; Fire Station #1; Park Administrative Offices; Adams Street Parking Garage; J.S. Johnson Community Center; Beaches Senior Center; Baldwin FireStation#46; Mandarin Senior Center; Mandarin Library; Maxville Community Center; Burnett Park; Burnett Park Community Center; and Victim Services Division.

The Department conducted a program access review of the following polling places: Jacksonville Main Library; Pablo Creek Library; Highlands Branch Library; Beaches Library; Brentwood Library; San Marco Library; Supervisor of Elections; Mandarin Library; Westbrook Library; and Regency Square Branch Library. This review was limited to the areas of the facilities used by the voting public: parking, the route from the parking area to the area used for voting, and the area used for voting.

The Department reviewed the City of Jacksonville's policies and procedures regarding voting, emergency management and disaster prevention, and sidewalk maintenance to evaluate whether persons with disabilities have an equal opportunity to utilize these programs.

Finally, the Department reviewed the Jacksonville Sheriff's Office policies and procedures regarding providing effective communication to persons who are deaf or hard-of-hearing.

### *JURISDICTION*

1. The ADA applies to the City of Jacksonville because it is a "public entity" as defined by title II. 42 U.S.C. § 12131(1).

2. The Department is authorized under 28 C.F.R. Part 35, Subpart F, to determine the compliance of the City of Jacksonville with title II of the ADA and the Department's title II implementing regulation, to issue findings, and, where appropriate, to negotiate and secure voluntary compliance agreements. Furthermore, the Attorney General is authorized, under 42 U.S.C. § 12133, to bring a civil action enforcing title II of the ADA should the Department fail to secure voluntary compliance pursuant to Subpart F.

3.    The Department is authorized under 28 C.F.R. Part 42, Subpart G, to determine the City of Jacksonville's compliance with section 504 of the Rehabilitation Act of 1973, to issue findings, and, where appropriate, to negotiate and secure voluntary compliance agreements. Furthermore, the Attorney General is authorized, under 29 U.S.C. § 794 and 28 C.F.R. §§ 42.530 and 42.108-110, to suspend or terminate financial assistance to the City of Jacksonville provided by the Department of Justice should the Department fail to secure voluntary compliance pursuant to Subpart G or to bring a civil suit to enforce the rights of the United States under applicable federal, state, or local law.

4.    The parties to this Agreement are the United States of America and the City of Jacksonville. The City of Jacksonville is a consolidated government defined in Section 1.01 of Chapter 92-341, Laws of Florida, and subsequent amendatory legislation.

5.    In order to avoid the burdens and expenses of an investigation and possible litigation, the parties enter into this Agreement.

6.    In consideration of, and consistent with, the terms of this Agreement, the Attorney General agrees to refrain from filing a civil suit in this matter regarding all matters contained within this Agreement, except as provided in the section entitled "Implementation and Enforcement."

## ACTIONS TAKEN BY THE CITY OF JACKSONVILLE

7.    The City of Jacksonville states that it has taken many actions to comply with the ADA, including but not limited to the following:

     a.    <u>Disabled Services Office</u>. The City of Jacksonville has maintained a Disabled Services Office since 1988. The Disabled Services Office is responsible for (i) increasing awareness concerning the accomplishments and needs of people with disabilities, (ii) monitoring federal and state legislation relating to disability rights, (iii) advising the Mayor and his staff on ADA compliance issues, and (iv) recommending ordinances that favorably impact on equal access and opportunity

for persons with disabilities.

b. <u>Mayor's Disability Council</u>. The City of Jacksonville has maintained its Mayor's Disability Council since 1989. These members volunteer their time and expertise to improve the lives of persons with disabilities. The Council works hand in hand with the Disabled Services Office to create and ensure access to City programs, services, and activities. The Council has been instrumental in passing numerous local laws concerning disability rights.

c. <u>ADA Coordinator</u>. The City of Jacksonville has funded a full-time ADA Coordinator position in City Hall since 1992. The ADA Coordinator manages the Disability Services Office and coordinates the City's efforts to comply with and carry out its responsibilities under the ADA, including any investigation of complaints communicated to it alleging its noncompliance with title II or alleging any actions that would be prohibited under title II. The ADA Coordinator's name, office address and phone number is made widely available to all interested individuals.

d. 9-1-1 Services. The City of Jacksonville has ensured that each 9-1-1 call station is equipped with a TTY or computer equivalent and has taken steps to ensure that persons who use TTYs have equivalent access to 9-1-1 services.

e. Sidewalk Accessibility. The City of Jacksonville has developed an ongoing Capital Improvement Plan (CIP) to install curb ramps and improve the accessibility on existing sidewalks and has implemented a process for soliciting and receiving input from persons with disabilities regarding the accessibility of its sidewalks.

## ACTIONS REQUIRED

### *NOTIFICATION*

8.    Within two (2) months of the effective date of this Agreement, the City of Jacksonville will adopt the attached Notice (Attachment A); distribute it to all agency heads; publish the Notice in a local newspaper of general circulation serving the City of Jacksonville; post the Notice on its Internet Home Page; and post copies in conspicuous locations in its public buildings.  It will refresh the posted copies, and update the contact information contained on the Notice, as necessary, for the life of this Agreement.  Copies will also be provided to any person upon request.

9.    Within three (3) months of the effective date of this Agreement, and on yearly anniversaries of this Agreement until it expires, the City of Jacksonville will implement and report to the Department its written procedures for providing information for interested persons with disabilities concerning the existence and location of the City of Jacksonville's accessible programs, services, and activities.

### GRIEVANCE PROCEDURE

10.    Within three (3) months of the effective date of this Agreement, the City of Jacksonville will adopt the attached ADA Grievance Procedure (Attachment B), distribute it to all agency heads, and post copies of it in conspicuous locations in each of its public buildings.  It will refresh the posted copies, and update the contact information contained on it, as necessary, for the life of the Agreement.  Copies will also be provided to any person upon request.

### GENERAL EFFECTIVE COMMUNICATION PROVISIONS

11.    The City of Jacksonville will (i) continue to identify sources of qualified sign language and oral interpreters, real-time transcription services, and vendors that can put documents in Braille, and (ii) implement and report to the Department within three months of the effective date of this agreement its written procedures, with time frames, for fulfilling requests from the public for sign language or oral interpreters, real-time transcription services, and documents in alternate formats (Braille, large print, accessible audio format, accessible electronic format (e.g.,

HTML), etc.).

12. The City of Jacksonville will take steps to ensure that all appropriate employees are trained and practiced in using the Florida Relay Service to make and receive calls.

### *9-1-1*

13. The City of Jacksonville will continue to ensure that each 9-1-1 call station is equipped with a TTY or computer equivalent.

14. The City of Jacksonville will continue to develop procedures for answering 9-1-1 calls that include training all call takers to use a TTY to take 9-1-1 calls, to recognize a "silent" open line as a potential TTY call and respond by TTY, and to ensure that TTY calls are answered as quickly as other calls received.

15. The City of Jacksonville will continue to monitor its incoming 9-1-1 TTY calls to ensure they are answered as quickly and accurately as other calls received.

16. The City of Jacksonville will continue to incorporate correct TTY call-taking procedures into 9-1-1 call takers' performance evaluations and will ensure that its personnel policies include written disciplinary procedures for call takers who fail to perform TTY call-taking consistent with the training and procedures. The City of Jacksonville will report to the Department its evaluation and procedures within three (3) months of the effective date of this Agreement.

### *LAW ENFORCEMENT AND EFFECTIVE COMMUNICATION*

17. Within three (3) months of the effective date of this Agreement, the City of Jacksonville will adapt for its own use and implement the City of Jacksonville Policy Statement on Effective Communication with People Who are Deaf or Hard of Hearing (Attachment C) and distribute to all Jacksonville Sherriff's Office officers the Guide for Law Enforcement Officers When in Contact with People Who are Deaf or Hard of Hearing (Attachment D).

18.  The City of Jacksonville will continue to contract with one or more local qualified oral/sign language interpreter agencies to ensure that the interpreting services will be available on a priority basis, twenty-four hours per day, seven days a week, to its Jacksonville Sheriff's Office or make other appropriate arrangements (such as contracting directly with or hiring qualified interpreters).

19.  The City of Jacksonville will continue to ensure that each Sheriff's Office station or substation and each jail and detention facility is equipped with a working TTY to enable persons who are deaf, hard of hearing, or who have speech disabilities to make outgoing telephone calls.  Where inmate telephone calls are time-limited, the City of Jacksonville will adopt policies permitting inmates who use TTYs a longer period of time to make those calls, due to the slower nature of TTY communications compared with voice communications.

### *EMPLOYMENT*

20.  Within twelve (12) months of the effective date of this Agreement, the City of Jacksonville will amend its employment policies, as necessary, to comply with the regulations of the U.S. Equal Employment Opportunity Commission implementing title I of the Americans with Disabilities Act of 1990, codified at 29 C.F.R. Part 1630.  At minimum, those policies will provide that the City of Jacksonville:

- will not discriminate on the basis of disability in its hiring or employment practices;

- will not ask a job applicant about the existence, nature, or severity of a disability. Applicants may be asked about their ability to perform specific job functions.  Medical examinations or inquiries may be made, but only after a conditional offer of employment is made and only if required of all applicants for the position;

- will make reasonable accommodations for the known physical or mental limitations of a qualified applicant or employee with a disability upon request unless the

accommodation would cause an undue hardship on the operation of the City's business.  If an applicant or an employee requests a reasonable accommodation and the individual's disability and need for the accommodation are not readily apparent or otherwise known, the City of Jacksonville may ask the individual for information necessary to determine if the individual has a disability related need for the accommodation;

- will maintain any employee's medical records separate from personnel files and keep them confidential; and

- will make an individualized assessment of whether a qualified individual with a disability meets selection criteria for employment decisions. To the extent the City of Jacksonville selection criteria have the effect of disqualifying an individual because of disability, those criteria will be job-related and consistent with business necessity.

### *POLLING PLACES*

21.  Some of the City of Jacksonville polling places may be owned or operated by other public entities subject to title II or by public accommodations subject to title III and, as such, would be subject to the obligation to provide program access or to remove barriers to accessibility under the ADA.  This Agreement does not limit future enforcement action against the owners or operators of these polling places by any person or entity, including the Department.

22.  Before designating any site as a new polling place, the Supervisor of Elections will survey the site using the survey instrument at Attachment F to determine whether the site contains barriers to access by people with disabilities in the parking, exterior route to the entrance, entrance, interior route to the voting area, or voting area.  The Supervisor of Elections will not designate any such site as a polling place until all such barriers have been removed.

23.  The Department surveyed certain of City of Jacksonville's polling places.  Barriers to access at such polling places owned by the City of Jacksonville and the dates by which the City of

Jacksonville will remove barriers are noted in Attachments I, J, and K.

24. Within twelve (12) months of the effective date of this Agreement, using the survey instrument at Attachment F, the Supervisor of Elections will survey all polling places not surveyed by the Department to identify barriers to access by people with disabilities in the parking, exterior route to the entrance, entrance, interior route to the voting area, and voting area. For each such polling place, the Supervisor of Elections will then either (1) ensure that all barriers to access by people with disabilities have been removed or (2) identify an alternate polling place with no barriers to access by people with disabilities.  That identification of accessible polling places will utilize the survey instrument that appears at Attachment F to this Agreement.  The Supervisor of Elections will then take immediate steps to change each inaccessible polling place to a new accessible location.  Under this provision of the Agreement, the Supervisor of Elections will ensure that barriers at each polling place the Department did not survey are either removed or a substitute accessible polling place is in operation before the next election occurring more than eighteen (18) months after the effective date of this Agreement.

25. Within three (3) months of the effective date of this Agreement, the Supervisor of Elections will continue to provide opportunities for same-day balloting for voters with disabilities whose assigned polling place does not have accessible parking, exterior route to entrance, entrance, interior route to the voting area, and voting area.  The method for providing these opportunities may include allowing individuals with disabilities to vote by an absentee ballot that is accepted if postmarked on the day of the election (or picked up by election officials at the home of the voter on the same day as the election), or any other method that ensures that voters with disabilities have the same degree of information available to them when casting their ballots as others.

26. Within three (3) months of the effective date of this Agreement, the Supervisor of Elections will survey its voter registration locations for accessibility to persons with disabilities by using the form provided at Attachment F and will report the results of this survey to the Department.  If barriers to access are identified, the Supervisor of Elections will implement and report to the

Department its plan to provide program access, which may include allowing persons to register to vote through alternative means or at alternative locations.

27.  Within three (3) months of the effective date of this Agreement, the Supervisor of Elections will make all voter registration materials available in alternate formats, including Braille, large print, accessible audio format, and accessible electronic format (e.g., HTML).

28.  Within the month prior to the next election that utilizes the Supervisor of Elections's polling places, and at yearly anniversaries of the effective date of this Agreement until it expires, the Supervisor of Elections will train poll workers on the rights of people with disabilities and the practical aspects of assuring those rights. The training will cover, at minimum, the need to maintain the physical accessibility of polling locations; how to assist people with disabilities, as necessary; and how to operate any non-standard voting equipment or accessible features of standard equipment (particularly new, accessible equipment).

### *EMERGENCY MANAGEMENT PROCEDURES AND POLICIES*

29.  The Department will work collaboratively with the City of Jacksonville to ensure that the City of Jacksonville's Comprehensive Emergency Management Plan (CEMP) will be in compliance with ADA requirements.  The touchstone for compliance with ADA requirements relating to emergency management is Chapter 7 of the Department's ADA Best Practices Tool Kit for State and Local Government (ADA Tool Kit), which addresses in detail key ADA obligations that apply to all aspects of emergency management, including planning, preparedness, evacuation, shelters, medical and social services, lodging and housing programs, recovery, and rebuilding.

30.  The City of Jacksonville is committed to compliance with the ADA requirements as outlined in Chapter 7 of the ADA Tool Kit.  Within sixty (60) days of the effective date of this Agreement, the City of Jacksonville will revise its CEMP and supporting documents so that they are consistent with title II of the ADA and its implementing regulation, as outlined in Chapter 7 of

the ADA Tool Kit, and the City of Jacksonville will provide a copy of its revised CEMP (including supporting documents) to the Department. The Department will review the revised CEMP and supporting documents to ensure compliance with title II of the ADA and its implementing regulation.

31.   If the City of Jacksonville contracts with another entity, such as the American Red Cross or another local government, to provide its emergency preparedness plans and emergency response services, the City of Jacksonville will ensure that the other entity complies with the following provisions on its behalf.

32.   Within three (3) months of the effective date of this Agreement, the City of Jacksonville will implement and report to the Department its written procedures that ensure that it regularly solicits and incorporates input from persons with a variety of disabilities and those who serve them regarding all phases of its emergency management program (preparedness, notification, response, mitigation, and recovery).

33.   Within six (6) months of the effective date of this Agreement, the City of Jacksonville will implement and report to the Department its written procedures that ensure that its community evacuation plans enable those who have mobility disabilities, are blind or have low vision, are deaf or hard of hearing, have cognitive disabilities, mental illness, or other disabilities to safely self-evacuate or be evacuated by others. Some communities are instituting voluntary, confidential registries of persons with disabilities who may need individualized evacuation assistance or notification. If the City of Jacksonville adopts or maintains such a registry, its report to the Department will discuss its procedures for ensuring voluntariness, appropriate confidentiality controls, and how the registry will be kept updated, as well as its outreach plan to inform persons with disabilities of its availability. Whether or not a registry is used, the City of Jacksonville plan should address accessible transportation needs for persons with disabilities.

34.   Within six (6) months of the effective date of this Agreement, the City of Jacksonville will

implement and report to the Department its written procedures that ensure that if its emergency warning systems use sirens or other audible alerts, it will also provide ways to inform persons who are deaf or hard of hearing of an impending disaster. The use of autodialed TTY messages to pre-registered individuals who are deaf or hard of hearing, text messaging, e-mails, open-captioning on local TV stations and other innovative uses of technology may be incorporated into such procedures, as well as lower-tech options such as dispatching qualified sign language interpreters to assist with emergency TV broadcasts.

35.  Within six (6) months of the effective date of this Agreement, the City of Jacksonville will implement and report to the Department its written procedures that ensure that emergency shelters have a back-up generator and a way to keep medications refrigerated (such as a refrigerator or a cooler with ice). Access to back-up power and refrigeration at such shelters will be made available to persons whose disabilities require access to electricity and refrigeration, for example, for using life-sustaining medical devices, providing power to motorized wheelchairs, and preserving certain medications, such as insulin, that require refrigeration. The written procedures will include a plan for notifying persons of the location of such shelters.

36.  Within six (6) months of the effective date of this Agreement, the City of Jacksonville will implement and report to the Department its written procedures that ensure that persons who use service animals are not separated from their service animals when sheltering during an emergency, even if pets are normally prohibited in shelters. The procedures will not segregate persons who use service animals from others but may take into account the potential presence of persons who, for safety or health reasons, should not be in contact with certain types of animals.

37.  Within six (6) months of the effective date of this Agreement, the City of Jacksonville will develop, implement, and report to the Department its plans for providing equivalent opportunities for accessible post-emergency temporary housing to persons with disabilities. Within one (1) year of the effective date of this Agreement, the City of Jacksonville will ensure

that information it makes available regarding temporary housing includes information on accessible housing (such as accessible hotel rooms within the community or in nearby communities) that could be used if people with disabilities cannot immediately return home after a disaster if, for instance, necessary accessible features such as ramps or electrical systems have been compromised.

### PHYSICAL CHANGES TO EMERGENCY SHELTERS

38.   Some of the City of Jacksonville's emergency shelters may be owned or operated by other public entities subject to title II or by public accommodations subject to title III and, as such, are subject to the obligation to provide program access or remove barriers to accessibility under the ADA. This Agreement does not limit such future enforcement action against the owners or operators of these facilities by any person or entity, including the Department.

39.   Within one (1) month of the effective date of this Agreement, the City of Jacksonville will request in writing that each of the owners and operators of the shelter facilities in which the City provides emergency programs or services will remove the barriers to access for persons with disabilities as noted in the Attachments to this Agreement. The request will specify that the remediation be completed within one (1) year of the effective date of this Agreement. The City of Jacksonville will simultaneously send a courtesy copy of the request to the Department.

40.   Within twelve (12) months of the effective date of this Agreement, the City of Jacksonville will survey the shelters in which the City provides emergency programs or services to determine whether the noted barriers have been removed. If not all barriers have been removed, the City of Jacksonville will identify within eighteen (18) months of the effective date of this Agreement an appropriate number of alternate shelters where the parking, exterior routes, entrances, interior routes to the shelter area, and toilet rooms to the shelter area comply with the standards described in paragraph 53 below.

41.   Within four (4) months of the effective date of this Agreement and until all emergency shelters

have accessible parking, exterior routes, entrances, interior routes to the shelter area, and toilet rooms serving the shelter area, the City of Jacksonville will identify and widely publicize to the public and to persons with disabilities and the organizations that serve them the most accessible emergency shelters.

### SIDEWALKS

42. The City of Jacksonville has a total area of 885 square miles (767 in land area) and has over 3,600 linear miles in roads, streets and highways (excluding rights-of-way owned or controlled by third parties). Virtually all of the City of Jacksonville's streets, roads, highways, and street level pedestrian walkways have been constructed or altered since January 26, 1992.

43. Within three (3) months of the effective date of this Agreement, the City of Jacksonville will implement and report to the Department its written process for soliciting and receiving input from persons with disabilities regarding the accessibility of its sidewalks, including, for example, requests to add curb cuts at particular locations.

44. Within five (5) years of the effective date of this Agreement, the City of Jacksonville will provide curb ramps or other sloped areas complying with the 2010 Standards at all intersections of streets, roads, and highways that have been constructed or altered since January 26, 1992 having curbs or other barriers to entry from a street level pedestrian walkway. Paving, repaving, or resurfacing a street, road, or highway is considered an alteration for the purposes of this Agreement. Filling a pothole is not considered an alteration for the purposes of this Agreement.

45. Beginning no later than three (3) months after the effective date of this Agreement, the City of Jacksonville will provide curb ramps or other sloped areas complying with the 2010 Standards at any intersection having curbs or other barriers to entry from a street level pedestrian walkway, whenever a new street, road, or highway is constructed or altered.

46. Within five (5) years of the effective date of this Agreement, the City of Jacksonville will

provide curb ramps or other sloped areas complying with the 2010 Standards at all places where a street level pedestrian walkway that has been constructed or altered since January 26, 1992 intersects with a street, road, or highway. Paving, repaving, or resurfacing a walkway is considered an alteration for the purposes of this Agreement.

47. Beginning no later than three (3) months after the effective date of this Agreement, the City of Jacksonville will provide curb ramps or other sloped areas complying with the 2010 Standards at all newly constructed or altered pedestrian walkways where they intersect a street, road, or highway.

### *WEB-BASED SERVICES AND PROGRAMS*

48. Within one (1) month of the effective date of this Agreement, and on subsequent anniversaries of the effective date of this Agreement, the City of Jacksonville will distribute to all persons – employees and contractors – who design, develop, maintain, or otherwise have responsibility for content and format of its website(s) or third party websites used by the City of Jacksonville (Internet Personnel) the technical assistance document, "Accessibility of State and Local Government Websites to People with Disabilities," which is Attachment H to this Agreement (it is also available at www.ada.gov/websites2.htm).

49. Within three (3) months of the effective date of this Agreement, and throughout the life of the Agreement, the City of Jacksonville will do the following:

    A. Establish, implement, and post online a policy that its web pages will be accessible and create a process for implementation;

    B. Ensure that all new and modified web pages and content are accessible;

    C. Develop and implement a plan for making existing web content more accessible;

    D. Provide a way for online visitors to request accessible information or services by posting a telephone number or e-mail address on its home page; and

     E.   Periodically (at least annually) enlist people with disabilities to test its pages for ease of use.

### *NEW CONSTRUCTION, ALTERATIONS, AND PHYSICAL CHANGES TO FACILITIES*

50.   The City of Jacksonville will ensure that all buildings and facilities constructed by or on behalf of the City of Jacksonville are constructed in full compliance with the requirements of 28 C.F.R. § 35.151, including applicable architectural standards.

51.   The City of Jacksonville will ensure that alterations to City of Jacksonville facilities are made in full compliance with the requirements of 28 C.F.R. § 35.151, including applicable architectural standards.

52.   The elements or features of the City of Jacksonville facilities that do not comply with the Standards, including those listed in Attachments I, J, K, and L, prevent some persons with disabilities from fully and equally enjoying the City of Jacksonville services, programs, or activities and constitute discrimination on the basis of disability within the meaning of 42 U.S.C. § 12132 and 28 C.F.R. §§ 35.149 and 35.150.

53.   When taking the actions required by this agreement, the City must comply with the 2010 ADA Standards for Accessible Design (2010 Standards), 28 C.F.R. § 35.104 (title II)(defining the "2010 Standards" as the requirements set forth in appendices B and D to 36 C.F.R. part 1191 and the requirements contained in subpart D of 28 C.F.R. part 36).

54.   Within nine (9) months of the effective date of this Agreement, the City of Jacksonville will install signage as necessary to comply with 28 C.F.R. § 35.163(b), after having surveyed all facilities that are the subject of this Agreement for the purpose of identifying those that have multiple entrances not all of which are accessible.

55.   <u>Newly Constructed Facilities</u>: In order to ensure that the following spaces and elements in City of Jacksonville facilities for which construction was commenced after January 26,1992, are

readily accessible to and usable by persons with disabilities, the City of Jacksonville will take the actions listed in Attachments I and M.

56. Altered Facilities: In order to ensure that the following spaces and elements in City of Jacksonville facilities for which alterations commenced after January 26, 1992, are readily accessible to and usable by persons with disabilities, the City of Jacksonville will take the actions listed in Attachments J and M.

57. Program Access in Existing Facilities: In order to ensure that each of the City of Jacksonville programs, services, and activities operating at a facility that is the subject of this Agreement, when viewed in its entirety, is readily accessible to and usable by persons with disabilities, the City of Jacksonville will take the actions listed in Attachments K and M.

58. Facilities and Programs Not Surveyed by the Department: The City of Jacksonville will review compliance with the requirements of title II of the ADA for those City of Jacksonville facilities and programs that were not reviewed by the Department. The City of Jacksonville will submit for review by the Department a detailed report listing the access issues identified during its review together with the corrective actions and completion dates proposed to resolve such issues. The review conducted by the City of Jacksonville, the access issues identified, and the corrective actions and completion dates proposed will be consistent with the requirements of title II of the ADA; the review of City of Jacksonville facilities and programs conducted by the Department for purposes of this Agreement; and the access issues, corrective actions, and completion dates reflected in Attachments I, J, K, and M. Due to the large number of facilities in the City, the City may elect to submit the reports required by this paragraph on yearly anniversaries of the effective date of this agreement for a period of up to three years, each such report covering approximately one-third (1/3) of the City's facilities.

### *PROGRAMS FOR VICTIMS OF DOMESTIC VIOLENCE AND ABUSE*

59. If the City of Jacksonville owns or operates any programs that provide shelter, counseling, or

other assistance or supportive services to victims of domestic violence or abuse and their families (hereafter referred to as Domestic Violence Programs), within three (3) months of the effective date of this Agreement, it will do the following.

    A.   Whatever written information is provided regarding its Domestic Violence Programs will also be provided in alternate formats, including Braille, large print, accessible audio format, and electronic formats (e.g., HTML), upon request.

    B.   Enter into contracts or make other arrangements with qualified sign language and oral interpreters to ensure their availability when required for effective communication with persons who are deaf or hard of hearing. The type of aid that will be required for effective communication will depend on the individual's usual method of communication, and the nature, importance, and duration of the communication at issue. In many circumstances, oral communication supplemented by gestures and visual aids, an exchange of written notes, use of a computer, or use of an assistive listening device may be effective. In other circumstances, qualified sign language or oral interpreters are needed to communicate effectively with persons who are deaf or hard of hearing. The more lengthy, complex, and important the communication, the more likely it is that a qualified interpreter will be required for effective communication with a person whose primary means of communication is sign language or speech reading.

    C.   If the City of Jacksonville's Domestic Violence Programs operate a hotline to take telephone calls of an emergency nature, the City of Jacksonville shall ensure that it provides equivalent service for persons who use TTYs, including providing direct-connection service for TTY users with hotline operators, without requiring TTY users to call through a third party operator, such as through the state or local Telecommunication Relay Services. The City of Jacksonville will obtain the necessary equipment, establish the written procedures, and provide the training necessary to ensure effective communication by Hotline staff with direct connection callers using

TTYs, as well as the training necessary to respond to callers who use the Telecommunication Relay Services.

D. Survey facilities used as shelters or designated as potential shelters – or for counseling, job training, education, clothing or household provisioning, or other aspects of Domestic Violence Programs – to ensure that adequate arrangements are available for potential clients and family members with disabilities, including adults and children who have mobility disabilities, who are blind or have low vision, and who are deaf or hard of hearing. Within one (1) year of the effective date of this Agreement, modify each such facility to remove the barriers or, alternatively, procure another, fully accessible facility to ensure that potential clients and family members with disabilities have integrated options when participating in a sheltering or other Domestic Violence program. Nothing in this Agreement requires any modifications that would compromise the confidentiality of a shelter or counseling center. Until there is a sufficient stock of accessible housing and other facilities within the sheltering program, the City of Jacksonville will implement written procedures ensuring that it has identified temporary accessible housing (such as accessible hotel rooms within the community or in nearby communities) and other facilities that could be used if people with disabilities need sheltering or in service access to a Domestic Violence Program. The cost to potential clients of being housed or otherwise served in alternate accessible facilities shall not exceed any costs normally attributed to clients of the City of Jacksonville's Domestic Violence Programs.

E. Implement written procedures and modify, as appropriate, eligibility criteria, to ensure that no person with a disability is turned away from a shelter or otherwise denied the opportunity to benefit from the services of the City of Jacksonville's Domestic Violence Programs on the basis of disability.

F. Implement written procedures to ensure that persons with disabilities who use service animals are not denied or discouraged from participating in Domestic Violence

Programs, are able to be housed and served in an integrated environment, and are not separated from their service animals while participating in the City of Jacksonville's Domestic Violence Programs even if pets are normally not permitted in the facilities where such programs are conducted. The procedures will not unnecessarily segregate persons who use service animals from others but may take into account the potential presence of persons who, for safety or health reasons, should not be in contact with certain types of animals. If the City of Jacksonville's Domestic Violence Programs require clients to make any payments for shelter or other services they provide, clients shall not be required to make additional payments because they or their family members use service animals.

G. Implement written procedures to ensure that reasonable modifications are made to the City of Jacksonville's Domestic Violence Programs when necessary for a client or family member with a disability to participate in such Programs, unless doing so would fundamentally alter the nature of the program.

H. Implement written policies to ensure that despite any "drug-free" policy of the City of Jacksonville Domestic Violence Programs, persons with disabilities who use medication prescribed for their use are able to continue using such medication while participating in such Programs or being housed in a shelter.

60. If the City of Jacksonville contracts with another entity to provide Domestic Violence Programs, it will ensure that the other entity complies with the preceding provisions on its behalf. If that entity will not comply with the following provisions, the City of Jacksonville will nonetheless take all necessary steps to ensure that its program is accessible to persons with disabilities.

61. Some of the City of Jacksonville shelters may be owned or operated by other public entities subject to title II or by public accommodations subject to title III and, as such, are subject to the obligation to provide program access or remove barriers to accessibility under the ADA. This

Agreement does not limit such future enforcement action against the owners or operators of these facilities by any person or entity, including the Department.

62. This Agreement shall not be construed to require the City of Jacksonville to divulge confidential information relating to the location or existence of any Domestic Violence Programs, beyond what is otherwise required by applicable law or what is necessary for the Department to effectively enforce this Agreement.

## *MISCELLANEOUS PROVISIONS*

63. Except as otherwise specified in this Agreement, at yearly anniversaries of the effective date of this Agreement until it expires, the City of Jacksonville will submit written reports to the Department summarizing the actions the City of Jacksonville has taken pursuant to this Agreement. Reports will include detailed photographs showing measurements, architectural plans, work orders, notices published in the newspaper, copies of adopted policies, and proof of efforts to secure funding/assistance for structural renovations or equipment.

64. Throughout the life of this Agreement, consistent with 28 C.F.R. § 35.133(a), the City of Jacksonville will maintain the accessibility of its programs, activities, services, facilities, and equipment, and will take whatever actions are necessary (such as routine testing of accessibility equipment and routine accessibility audits of its programs and facilities) to do so. This provision does not prohibit isolated or temporary interruptions in service or access due to maintenance or repairs. 28 C.F.R. § 35.133(b).

65. Within six (6) months of the effective date of this Agreement, the City of Jacksonville will develop or procure a two-hour training program on the requirements of the ADA and appropriate ways of serving persons with disabilities. The City of Jacksonville will use the ADA technical assistance materials developed by the Department and will consult with interested persons, including individuals with disabilities, in developing or procuring the ADA training program.

66. Within one (1) year of the effective date of this Agreement, the City of Jacksonville will deliver its training program to all City of Jacksonville employees who have direct contact with members of the public. At the end of that period, the City of Jacksonville will submit a copy of its training curriculum and materials to the Department, along with a list of employees trained and the name, title, and address of the trainer.

## IMPLEMENTATION AND ENFORCEMENT

67. If at any time the City of Jacksonville desires to modify any portion of this Agreement because of changed conditions making performance impossible or impractical or for another reason, it will promptly notify the Department in writing, setting forth the facts and circumstances thought to justify modification and the substance of the proposed modification. Until there is written Agreement by the Department to the proposed modification, the proposed modification will not take effect. These actions must receive the prior written approval of the Department, which approval will not be unreasonably withheld or delayed.

68. The Department may review compliance with this Agreement at any time. If the Department believes that the City of Jacksonville has failed to comply in a timely manner with any requirement of this Agreement without obtaining sufficient advance written agreement with the Department for a modification of the relevant terms, the Department will so notify the City of Jacksonville in writing and it will attempt to resolve the issue or issues in good faith. If the Department is unable to reach a satisfactory resolution of the issue or issues raised within 30 days of the date it provides notice to the City of Jacksonville, it may institute a civil action in federal district court to enforce the terms of this Agreement, or it may initiate appropriate steps to enforce title II and section 504 of the Rehabilitation Act.

69. For purposes of the immediately preceding paragraph, it is a violation of this Agreement for the City of Jacksonville to fail to comply in a timely manner with any of its requirements without obtaining sufficient advance written agreement with the Department for an extension of the relevant time frame imposed by the Agreement.

70. Failure by the Department to enforce this entire Agreement or any provision thereof with regard to any deadline or any other provision herein will not be construed as a waiver of the Department's right to enforce other deadlines and provisions of this Agreement.

71. This Agreement is a public document. A copy of this document or any information contained in it will be made available to any person by the City of Jacksonville or the Department on request.

72. This agreement shall not be construed as an admission of liability or discrimination by the City.

73. This Agreement constitutes the entire agreement between the parties on the matters raised herein, and no other statement, promise, or agreement, either written or oral, made by either party or agents of either party, that is not contained in this written Agreement (including its Attachments, which are hereby incorporated by reference), will be enforceable. This Agreement does not purport to remedy any other potential violations of the ADA or any other federal law. This Agreement does not affect the City of Jacksonville's continuing responsibility to comply with all aspects of the ADA and section 504 of the Rehabilitation Act.

74. This Agreement will remain in effect for three (3) years, with the exception of the following paragraphs, which will remain in effect for five (5) years:  8-10, 12, 15, 17-19, 22, 28, 43-49, 59-60, 63-64, 67-76.

75. The person signing for the City of Jacksonville represents that he or she is authorized to bind the City of Jacksonville to this Agreement.

76. The effective date of this Agreement is the date of the last signature below.

For the City of Jacksonville:

For the United States:

THOMAS E. PEREZ

Assistant Attorney General for Civil Rights

By: /s/ Cleveland Ferguson, III for

   MAYOR ALVIN BROWN


Date: 4/16/13


Attest:


By: /s/ James R. McCain, Jr.

   James R. McCain, Jr.

   Corporation Secretary


In accordance with the Ordinance Code of the City of Jacksonville, I do hereby certify that there is an unexpended, unencumbered, and un-impounded balance in the appropriation sufficient to cover the foregoing agreement; and that provision has been made for the payment of monies provided therein to be paid.


/s/ C. Ronald Belton

C. Ronald Belton, CFO

Director of Finance


CITY Agreement No. 9832

EVE HILL

Senior Counselor to the Assistant Attorney General

Civil Rights Division

GREGORY FRIEL, Acting Section Chief

KEVIN KIJEWSKI, Deputy Chief

By: /s/ Jennifer K. McDannell by KJK

   JENNIFER K. MCDANNELL,

   Supervisory Attorney


By: /s/ Dana L. Jackson

   DANA L. JACKSON, Investigator

   MICHELE ANTONIO MALLOZZI,

   Architect

   Disability Rights Section – NYA

   Civil Rights Division

   U.S. Department of Justice

   950 Pennsylvania Avenue, N.W.

   Washington, DC 20530

   (202) 307-0663

   (202) 514-7821 (fax)


Date: April 19, 2013

/s/ LTW

Form Approved:

/s/ Cindy Laquidara

---

Return to Project Civic Access


ADA Home Page


April 19, 2013